**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 27, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

WARREN MCCOWAN,

     Plaintiff - Appellee,

v.

MARK MORALES,

     Defendant - Appellant,

and

THE CITY OF LAS CRUCES, NEW
MEXICO, a/k/a Las Cruces Police
Department,

     Defendant.

No. 18-2169

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 2:17-CV-00902-MLC-GJF)**
_____

Mark D. Standridge, City of Las Cruces (Cody R. Rogers, Jarmie & Rogers, P.C., with
him on the briefs), Las Cruces, New Mexico, for Defendant-Appellant Mark Morales.

Daisy Chaparro (James D. Tawney with her on the brief), Flores, Tawney & Acosta P.C.,
Las Cruces, New Mexico, for Plaintiff-Appellee Warren McCowan.
_____

Before **TYMKOVICH**, Chief Judge, **EBEL**, and **LUCERO**, Circuit Judges.
_____

**EBEL**, Circuit Judge.

_____

In this interlocutory appeal, Defendant Mark Moralez,[1] a Las Cruces, New

Mexico police officer, challenges the district court's decision to deny him summary

judgment on the basis of qualified immunity from two of Plaintiff Warren

McCowan's 42 U.S.C. § 1983 claims. Those claims alleged that the officer (1) used

excessive force against McCowan while driving him to the police station after having

arrested him for drunk driving, and (2) was deliberately indifferent to McCowan's

serious medical needs—his injured shoulders—while at the police station, before

transporting McCowan to the county detention center where medical care was

available. We affirm the denial of qualified immunity on both claims.

McCowan based his excessive-force claim on his assertion that Officer

Moralez placed McCowan in the back seat of a patrol car, handcuffed behind his back

and unrestrained by a seatbelt, and then drove recklessly to the police station,

knowing his driving was violently tossing McCowan back and forth across the

backseat. This rough ride, McCowan contends, injured his shoulders, after McCowan

had advised the officer before the trip to the station that he had a previous shoulder

injury.

As to this claim, it was clearly established at the time of these events that an

officer's gratuitous use of excessive force against a fully compliant, restrained, and

_____

[1] The district court pleadings refer to the defendant as Mark Morales, but he asserts
the proper spelling of his last name is Moralez. We, therefore, refer to him in the
body of our opinion as Moralez.

2

non-threatening misdemeanant arrestee is unreasonable—and, therefore, violates the Fourth Amendment. Thus, we agree with the district court that Officer Moralez is not entitled to qualified immunity from McCowan's excessive-force claim.

McCowan's second claim alleged that Officer Moralez was deliberately indifferent to McCowan's serious medical needs—his injured shoulders—by delaying McCowan's access to medical care until he arrived at the county detention center.[2] Because these allegations alleged a clearly established violation of the Fourteenth Amendment, we also AFFIRM the district court's decision to deny Officer Moralez qualified immunity on that claim.

Therefore, having jurisdiction over this appeal under 28 U.S.C. § 1291, see Mitchell v. Forsyth, 472 U.S. 511, 530 (1985), we AFFIRM the district court's decision in full, and remand this case to the district court for further proceedings consistent with our decision.

## I. BACKGROUND

Importantly, the district court denied Officer Moralez qualified immunity at the summary judgment stage of this litigation. For purposes of this interlocutory

---

[2] McCowan's Fourth Amendment excessive force claim is limited to his "rough ride" to the jail in the patrol car. Although McCowan also claims he was roughly handled at the jail, he does not assert that as the basis for an additional Fourth Amendment excessive-force claim. Instead, he asserts facts regarding his treatment at the jail only as a predicate for his Fourteenth Amendment claim of deliberate indifference to his serious medical needs. Thus, we consider those facts only in the context of whether McCowan was unreasonably denied medical assistance at the jail in violation of his Fourteenth Amendment rights.

appeal, then, we must "take as true the facts the district court has determined a reasonable jury could find at trial." Walton v. Powell, 821 F.3d 1204, 1207 (10th Cir. 2016) (citing Johnson v. Jones, 515 U.S. 304, 313 (1995)). Here, those facts include the following:

At almost midnight on August 21, 2015, Officer Moralez pulled McCowan over for driving without his headlights. "McCowan had red, bloodshot, watery eyes, a flushed face, slurred his words, smelled strongly of alcohol and had a thirty pack of beer in his backseat. [He] admitted he drank three beers one to two hours earlier." (Aplt. App. at 172 (record citations omitted).) McCowan agreed to take a sobriety test but, before doing so, he "informed Officer Morale[z] that he had a pending social security disability claim for a neck and shoulder injury, an injury which disrupted his equilibrium and would thus impair his ability to pass the test." (Id. 173.)

After McCowan "perform[ed] 'poorly' on the sobriety test," Officer Moralez arrested him. (Id.)

> As he was handcuffed, McCowan claims he requested the cuffs be left "loose" and forward facing so as not to aggravate his shoulder injury, but Officer Morale[z] refused because he suspected McCowan was lying about his injury. McCowan further claims Officer Morale[z] did not check the tightness of the handcuffs, and that he [McCowan] was fully compliant with Officer Morale[z]' requests.

(Id. (record citations omitted).) It is undisputed "that McCowan was compliant." (Id.)

> Once handcuffed, McCowan was placed in the back of Officer Morale[z]'s police car and driven to the Las Cruces Police Department, which took two minutes and covered .8 miles. McCowan asserts he was not buckled in, and as a result of Officer Morale[z]' fast, jerky driving,

4

was repeatedly slammed throughout the backseat "like a ping pong ball." McCowan begged Officer Morale[z] to slow down, but McCowan claims Officer Morale[z] laughed at him and continued to speed. McCowan believes his being tossed around re-injured his shoulder.

(Id. 173-74 (record citations omitted).)

Once at the police station,

> McCowan was placed in a holding cell within the . . . Police Department where, consistent with protocol, he was handcuffed to a metal bench. Because of searing shoulder pain, McCowan requested he not be handcuffed. When that request was denied, McCowan pleaded to be handcuffed from the front, which was also denied. . . .
>
> Soon thereafter, McCowan was removed from his cell to be breathalyzed. He blew a .08 and .09, just above the legal limit in New Mexico. McCowan was returned to his cell while Officer Morale[z] completed paperwork relating to his arrest. McCowan asserts that he continued to cry and scream in pain, and begged the officers present, including Officer Morale[z], to loosen his handcuffs. According to McCowan, the officers laughed at his request.
>
> At some point . . . , Officer Morale[z] entered McCowan's cell to prepare his transfer to the Dona Ana County Detention Center. According to McCowan, Officer Morale[z] slightly loosened his handcuffs upon discovering McCowan's wrists were purple. He then ordered McCowan to stand up straight, but McCowan was unable to do so because he was handcuffed and in pain. With the assistance of another officer, McCowan was pulled off the floor, causing his shoulders to audibly tear. McCowan screamed in pain but no medical treatment was offered or provided. McCowan was then taken to the detention center, where he was medically cleared and booked despite telling the booking officer he was in "excruciating pain."
>
> Following his arrest, McCowan had two shoulder surgeries and accumulated nearly $120,000 in medical bills. In February 2016, his DUI and failure to use headlamp charges were dismissed without prejudice.

5

(Id. 174-75 (record citations, footnote omitted).)[3]

McCowan sued Officer Moralez and his employer, the City of Las Cruces, asserting claims under both 42 U.S.C. § 1983 and New Mexico law. Officer Moralez moved for summary judgment on the § 1983 claims based on qualified immunity. Relevant here, the district court[4] denied Officer Moralez qualified immunity on two of McCowan's § 1983 claims, which alleged that 1) Officer Moralez used excessive force against McCowan by placing him in the back seat of the patrol car, handcuffed but unrestrained by a seatbelt, and then driving recklessly to the police station, knowing McCowan was being tossed about the back seat; and 2) Officer Moralez was deliberately indifferent to McCowan's serious medical needs—his injured shoulders—by delaying his access to medical care until Officer Moralez transported

---

[3] Although we "usually take as true the facts the district court has determined a reasonable jury could find at trial," Walton, 821 F.3d at 1207, Officer Moralez, citing Scott v. Harris, 550 U.S. 372 (2007), asserts we should not accept as true the fact that McCowan told the booking officer at the detention center that he was in excruciating pain. (We have jurisdiction to consider this argument in this interlocutory appeal. See Scott, 550 U.S. at 375-76; Walton, 821 F.3d at 1207-08.) Although McCowan swore in his affidavit that he told the booking officer at the detention center that he was hurt and in excruciating pain, Officer Moralez contends those facts are blatantly contradicted by the detention center's intake form, which indicates instead that McCowan did not complain about anything when he was booked into the detention center. Unlike the video of the high speed chase that was at issue in Scott, which "blatantly contradicted" the § 1983 plaintiff's version of the events in that case, 550 U.S. at 374-75, 380, the detention center's intake form at issue here does not demonstratively depict the events as they occurred, but is instead a jailor's recording of what he perceived, which is more susceptible to being mistaken, falsified or incomplete. In any event, our decision here ultimately does not turn on this one fact that Officer Moralez asks us to disregard.

[4] A magistrate judge conducted this case with the parties' consent.

6

McCowan to the detention center, where medical care was available. Officer

Moralez brings this interlocutory appeal from the district court's decision denying

him qualified immunity on these two claims.[5]

## II. STANDARD OF REVIEW

> [We] review the denial of a summary judgment motion raising qualified immunity questions de novo. Because of the underlying purposes of qualified immunity, we review summary judgment orders deciding qualified immunity questions differently from other summary judgment decisions. After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff. Applying the same standards as the district court, we must determine whether the plaintiff has satisfied a heavy two-part burden. The plaintiff must first establish that the defendant's actions violated a constitutional or statutory right. If the plaintiff establishes a violation of a constitutional or statutory right, he must then demonstrate that the right at issue was clearly established at the time of the defendant's unlawful conduct. In determining whether the right was "clearly established," the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether the right was sufficiently clear that a reasonable officer would understand that what he is doing violates that right.

Estate of Ceballos v. Husk, 919 F.3d 1204, 1212-13 (10th Cir. 2019) (quoting

Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001)). A court can consider the

two qualified-immunity inquiries—whether the plaintiff has established a statutory or

constitutional violation and whether that violation was clearly established—in any

order. See Pearson v. Callahan, 555 U.S. 223, 236 (2009).

> If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity. If the plaintiff successfully

---

[5] The district court granted Officer Moralez qualified immunity on McCowan's § 1983 claims alleging the officer handcuffed McCowan too tightly and conspired with other officers to violate McCowan's civil rights. The court also granted the City summary judgment on McCowan's § 1983 claim against it. None of these other decisions are at issue here.

establishes the violation of a clearly established right, the burden shifts to the defendant, who must prove that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. In short, although we review the evidence in the light most favorable to the nonmoving party, the record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity.

Estate of Ceballos, 919 F.3d at 1212-13 (quoting Medina, 252 F.3d at 1128).

[T]his court has jurisdiction to consider [a defendant's] interlocutory appeal from the denial of qualified immunity only to the extent that it presents abstract issues of law. See Mitchell v. Forsyth, 472 U.S. [at] 530 . . . . We do not have jurisdiction to review the district court's determination that there are disputed factual issues that preclude summary judgment. See Johnson, 515 U.S. at 307 . . . .

Estate of Ceballos, 919 F.3d at 1213.

## III. DISCUSSION

### A. McCowan's excessive-force claim set forth a clearly established Fourth Amendment violation

McCowan asserted that Officer Moralez used excessive force against him when the officer placed McCowan, handcuffed but unrestrained by a seatbelt, in the "caged" back seat of the patrol car, and then drove recklessly, knowingly tossing McCowan about the back seat. Although we briefly address whether McCowan established a constitutional violation—he did—we focus primarily on the question of whether that violation was clearly established at the time of these events, August 21-22, 2015, because that is the focus of Officer Moralez's argument on appeal. We conclude that the constitutional violation at issue under McCowan's excessive force claim was indeed clearly established.

8

**1. McCowan asserted an excessive force claim actionable under the Fourth Amendment**

"Excessive force claims can be maintained under the Fourth, Fifth, Eighth, or Fourteenth Amendment," depending on "where the plaintiff finds himself in the criminal justice system" at the time of the challenged use of force. Estate of Booker v. Gomez, 745 F.3d 405, 418-19 (10th Cir. 2014) (internal quotation marks, alteration omitted). Here, the Fourth Amendment applies because the challenged force occurred after McCowan had been arrested without a warrant and before any determination as to whether there was probable cause to charge him with a crime. See id. at 419.

A Fourth Amendment excessive-force claim is governed by a purely objective standard: "A police officer violates an arrestee's . . . Fourth Amendment right to be free from excessive force during an arrest if the officer's actions were not 'objectively reasonable' in light of the facts and circumstances confronting him." Estate of Ceballos, 919 F.3d at 1213 (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)) (further quotation omitted).[6]

---

[6] The Fourteenth, instead of the Fourth, Amendment, applies to an excessive-force claim brought by a pretrial detainee—"one who has had a 'judicial determination of probable cause as a prerequisite to [the] extended restraint of [his]liberty following arrest.'" Estate of Booker, 745 F.3d at 419 (quoting Bell v. Wolfish, 441 U.S. 520, 536 (1979)). Applying that definition of pretrial detainee, this court, in Estate of Booker, explained that the Fourth Amendment applied to an excessive-force claim brought by an individual like McCowan, who complained of force used after his warrantless arrest but before any probable-cause determination has been made because that person was still an arrestee and not yet a pretrial detainee. See id.; see also J.H. ex rel. J.P. v. Bernalillo Cty., 806 F.3d 1255, 1259-60 (10th Cir. 2015). The distinction we drew in Estate of Booker between an arrestee and a pretrial detainee

9

To determine the objective reasonableness of the use of force, we "must balance 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" McCoy v. Meyers, 887 F.3d 1034, 1045 (10th Cir. 2018) (quoting Graham, 490 U.S. at 396). In conducting this balancing, we consider the factors the Supreme Court clearly set forth in Graham v. Connor: "(1) 'the severity of the crime at issue,' (2) 'whether the suspect poses an immediate threat to the safety of the officers or others,' and (3) 'whether the suspect is actively resisting arrest or attempting to evade arrest by flight.'" Id. (quoting Graham, 490 U.S. at 396) (alteration omitted).

Applying the Graham factors to Fourth Amendment excessive force claims provides a method for measuring the reasonableness of force in any given situation. The specific essential facts presented here, as we accept them for purposes of this interlocutory appeal, are (1) the gratuitous use of force against (2) a fully compliant

was critical in that case because, while we apply only an objective standard to an arrestee's Fourth Amendment excessive-force claim, at the time we decided Estate of Booker, we applied both an objective and subjective test to a pretrial detainee's Fourteenth Amendment excessive-force claim. See 745 F.3d at 423. The distinction between arrestee and pretrial detainee is less important in this case because the Supreme Court has now clarified that only the objective (and not a subjective) standard applies to a pretrial detainee's Fourteenth Amendment excessive-force claim. See Kingsley v. Hendrickson, 135 S. Ct. 2466, 2470, 2472-73 (2015). Thus, the same objective standard now applies to excessive-force claims brought under either the Fourth or the Fourteenth Amendment. In the case before us, the district court, declining to decide which amendment governed McCowan's excessive-force claim, considered Officer Moralez's subjective intent by noting that, as alleged, the officer's conduct in laughing at McCowan as he was flung about the back seat was "malicious and sadistic" (Aplt. App. 181). That was error under a purely objective analysis. In conducting our de novo review, therefore, we do not consider Officer Moralez's subjective intent here.

10

and subdued misdemeanant arrestee (3) who posed no threat to anyone. That specific factual scenario clearly falls on the unreasonable-force side of the Graham continuum. Such use of force would be unreasonable and clearly in violation of the Fourth Amendment. See Kostrzewa v. City of Troy, 247 F.3d 633, 640 (6th Cir. 2001) (stating that, "if the defendants drove recklessly with the plaintiff handcuffed in the back seat so as to cause him further pain and injury, this, by itself, is enough to state a claim upon which a reasonable factfinder could conclude that the officers used excessive force"); see also Chambers v. Pennycook, 641 F.3d 898, 908 (8th Cir. 2011) (holding that evidence indicating the alleged use of gratuitous force on an arrestee, which included repeatedly choking and kicking him during a trip to the hospital in a patrol car, during which an officer "extended the journey by taking a roundabout route and intentionally driving so erratically that [the arrestee] was jerked roughly back and forth in his car seat while his head was positioned adjacent to the dashboard," supported a Fourth Amendment violation).

Officer Moralez inaccurately compares this case to a dissimilar situation where officers simply failed to seatbelt a handcuffed prisoner who was then injured in a vehicular accident due to the driver-officer's negligence. See, e.g., Brown v. Larsen, 653 F. App'x 577, 577-80 (10th Cir. 2016) (unpublished); Dexter v. Ford Motor Co., 92 F. App'x 637, 638, 640-44 (10th Cir. 2004) (unpublished). That is not what McCowan has asserted happened here. Instead, McCowan's affidavit states that Officer Moralez, after placing the handcuffed McCowan in the back seat unrestrained by a seatbelt, drove recklessly; McCowan pleaded with the officer to slow down and

11

stop taking such sharp turns; Officer Moralez laughed and continued to drive recklessly; as a result McCowan was tossed about and ended up at the opposite end of the patrol car's backseat.  That is a very different scenario than the situations this court addressed in Dexter and Brown.  See generally Kingsley, 135 S. Ct. at 2472 (stating, in addressing pretrial detainee's Fourteenth Amendment excessive force claim, that negligence is not enough; to be actionable, the conduct must be purposeful, knowing, or possibly reckless).[7]

_____

[7] In Kingsley, the Supreme Court noted that an excessive force claim raises two different state-of-mind questions.  See 135 S. Ct. at 2472.  The first state-of-mind question asks whether the defendant deliberately, rather than accidentally (or negligently), applied the challenged force.  Id.  As to this question, the Court in Kingsley "assume[d] that . . . the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind.  That is because, as we have stated, liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."  Id. (internal quotation marks omitted).  In the case before us, McCowan has established that Officer Moralez knowingly or purposefully applied the alleged excessive force because, according to McCowan, he asked the officer to slow down and the officer just laughed and continued driving recklessly.

Kingsley went on to note that the second state-of-mind question that an excessive-force claim poses is whether, in deciding when the force used is excessive, a court should consider the defendant official's subjective motive or instead consider only whether an objective officer in the defendant official's position would have deemed the force used to be excessive.  Id.  In our case, we apply only an objective reasonableness inquiry to McCowan's Fourth Amendment claim.  See Estate of Ceballos, 919 F.3d at 1213 (applying Graham, 490 U.S. at 396); cf. Kingsley, 135 S. Ct. at 2473 (similarly holding, in addressing a Fourteenth Amendment excessive-force claim, "that a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable").  Here, as we have explained, Officer Moralez's gratuitous use of force against a compliant and restrained misdemeanant like McCowan was objectively unreasonable under Graham.

12

Of course, to succeed on this excessive-force claim, McCowan will ultimately have to prove that the events at issue unfolded as he contends they did. But his claim is sufficient to state an actionable Fourth Amendment violation.

**2. The Fourth Amendment violation McCowan alleged was clearly established in August 2015**

The real focus of Officer Moralez's arguments on appeal is whether this Fourth Amendment violation was clearly established in August 2015. "To be clearly established, ordinarily there must be prior Supreme Court or Tenth Circuit precedent, or the weight of authority from other circuits, that would have put an objective officer in [Moralez]'s position on notice that he was violating [McCowan]'s Fourth Amendment rights." Estate of Ceballos, 919 F.3d at 1213 (internal quotation marks omitted).

> The Supreme Court has warned against defining a clearly established right "at a high level of generality." White v. Pauly, —U.S.—, 137 S.Ct. 548, 552 . . . (2017) (per curiam) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742 . . . (2011)). Instead, "the clearly established law must be 'particularized' to the facts of the case." Id. (quoting Anderson v. Creighton, 483 U.S. 635, 640 . . . (1987)). This is not to say that there must be "a case directly on point for a right to be clearly established." Kisela[ v. Hughes], [—U.S.—,] 138 S.Ct. [1148,] 1152 [(2018)] (quoting White, 137 S.Ct. at 551). But the "existing precedent must have placed the statutory or constitutional question beyond debate." Id. (quoting White, 137 S.Ct. at 551). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Mullenix v. Luna, —U.S.—, 136 S.Ct. 305, 308 . . . (2015) (quoting Reichle v. Howards, 566 U.S. 658, 664 . . . (2012)).

Estate of Ceballos, 919 F.3d at 1214-15. The need for specificity is especially important in Fourth Amendment excessive force cases because

13

> it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue.

City of Escondido v. Emmons, 139 S. Ct. 500, 503 (2019) (quoting Kisela, 138 S. Ct. at 1153). Nonetheless, even in the Fourth Amendment context, there need not be a prior "case directly on point," so long as there is existing precedent that places the unconstitutionality of the alleged conduct "beyond debate." District of Columbia v. Wesby, 138 S. Ct. 577, 590 (2018) (internal quotation marks omitted). For example (and as explained in greater detail below), this court, addressing a Fourth Amendment excessive-force claim, recently held that, although there was no "factually identical" prior case, there was still sufficient Tenth Circuit case law that "made it clear to any reasonable officer in the [Defendants'] position that the post-restraint force [challenged in that case] was unconstitutional." McCoy, 887 F.3d at 1052.

Officer Moralez asserts that there is no prior Supreme Court or Tenth Circuit excessive force case involving an officer driving recklessly so that he knowingly tossed about the backseat of his patrol car a handcuffed but otherwise unrestrained arrestee. Therefore, Officer Moralez contends that he was not on notice that what he did (as McCowan has alleged it) violated the Fourth Amendment. But the relevant inquiry here, as this court explained in McCoy, 887 F.3d at 1052-53, is whether there were relevant Tenth Circuit cases giving Officer Morales notice that the gratuitous

14

use of force against a fully compliant, restrained, and non-threatening misdemeanant arrestee was unconstitutional. There certainly were.

We begin by determining the salient factual components of McCowan's claim. We find six: 1) McCowan was being arrested for a non-violent misdemeanor. 2) He was handcuffed behind his back, and not restrained by any seatbelt, rendering him vulnerable because he was incapable of protecting himself from the "rough ride" to the police station. 3) He was compliant during the arrest and posed no threat to Officer Moralez or anyone else. 4) Officer Moralez knew of McCowan's extra vulnerability because of his pre-existing shoulder injury. 5) There was no law enforcement necessity nor reason even advanced for the "rough ride" that resulted in McCowan being slammed from side to side in the police car. 6) McCowan contemporaneously and unmistakably complained of severe pain and injury during Officer Moralez's challenged conduct.

Surely, if we can find precedent holding an officer liable where most of these salient facts are present, we can conclude that there was factually relevant precedent that put Officer Moralez on notice of the unconstitutionality of his behavior. Further, if we can find cases holding an officer was not entitled to qualified immunity on a lesser subset of these salient factors, then a fortiori those cases too should have advised Officer Moralez of the illegality of his behavior. Using that framework, we consider four Tenth Circuit cases applying the Supreme Court's Graham decision that McCowan argues reasonably should have advised Officer Moralez of the unconstitutionality of his behavior.

15

In McCoy v. Meyers, 887 F.3d 1034 (10th Cir. 2018), the plaintiff alleged that officers seized him, during an armed hostage situation, by bringing him to the ground, knocking him unconscious with a carotid artery maneuver, handcuffing his arms behind his back, zip-tying his legs together, and placing him in a seated position. Id. at 1038. When the plaintiff "regained consciousness, the officers resumed striking him and placed him into a second carotid restraint, rendering him unconscious a second time." Id. Applying the three Graham factors, this court determined that a reasonable jury could find that the force officers applied after restraining the suspect was excessive, in violation of the Fourth Amendment. Id. at 1049-52. Comparing that case to ours, McCoy found the officers there were in violation of the Fourth Amendment largely on the existence of salient fact number two—that the suspect had been restrained so that he was no longer a threat to the officers or anyone else; nor was he capable of defending himself. The other salient facts that McCowan alleges here only operate to make Officer Moralez's conduct even less reasonable. So this precedent is not only on point—it is a fortiori or super precedent.

McCoy further held that, although there was no "factually identical" prior case, there was sufficient Tenth Circuit case law that "made it clear to any reasonable officer in the [Defendants'] position that the post-restraint force was unconstitutional." Id. at 1052. McCoy specifically identified three prior Tenth Circuit cases that, applying the Graham factors, "clearly establish that the Fourth Amendment prohibits the use of force without legitimate justification, as when a

16

subject poses no threat or has been subdued." Id. McCoy reached this conclusion while keeping in mind the Supreme Court's admonitions against conducting the clearly established analysis at too great a level of generality. See id. at 1044. It seemed clear and well established to our court in McCoy that when an officer inflicts gratuitous force against a fully compliant and subdued arrestee he is not protected by qualified immunity even though there has not yet been a case involving the precise manner that the officer chose to inflict that unconstitutional force.

McCoy provides us clearly established law at the time relevant to this case—August 2015—in two ways. First, although this court decided McCoy in 2018, well after the August 2015 incident involved in our case, McCoy held that the use of force against a fully subdued arrestee had already been clearly established to violate the Fourth Amendment as of the date of the unconstitutional conduct in McCoy, March 2011. See 887 F.3d at 1038. Specifically, McCoy held that it was already clearly established in 2011 that "the Fourth Amendment prohibits the use of force without legitimate justification, as when a subject poses no threat or has been subdued." Id. at 1052. Second, in determining that the relevant law was clearly established as of the time of the 2011 conduct in McCoy, McCoy relied on three prior Tenth Circuit cases, all of which were decided before the 2011 conduct at issue in McCoy and so, of course, they also predated the 2015 incident involving Officer Moralez arresting McCowan. Thus, McCoy held that as of the time of Officer Moralez's conduct here in 2015, there were already three clearly established pre-existing Tenth Circuit cases making it clear to a reasonable officer in Moralez's position that applying gratuitous

17

force to a restrained and compliant misdemeanant suspect violated the Fourth Amendment. Following McCoy, we, therefore, rely on the same three earlier Tenth Circuit cases upon which McCoy relied, see 887 F.3d at 1045-47, 1052-53.

In Weigel v. Broad, 544 F.3d 1143, 1146-49, 1151-53 (10th Cir. 2008), this court, applying the Graham factors, held that an officer's use of force would be unreasonable and, thus, violate the Fourth Amendment, if applied after a drunk driving suspect had been subdued, handcuffed and his legs restrained. In that case, although the drunk driving suspect initially agreed to take a sobriety test, he then walked away, crossing the highway and continuing to flee even after being hit by the mirror of a passing vehicle. Id. at 1148. After a struggle, officers and bystanders subdued the suspect by handcuffing his arms, tying his legs together, laying on top of his legs, and kneeling on his upper torso. Id. The suspect eventually died of asphyxiation. Id. at 1149. This court held that those facts sufficiently supported a Fourth Amendment violation. Id. at 1153.

The incident in Weigel occurred in December 2002 and the Tenth Circuit held that the unconstitutionality of the officers' behavior there was clearly established as of that date, which precedes the date of Officer Moralez's conduct here by nearly thirteen years! In Weigel, we went on to conclude:

> We do not think it requires a court decision with identical facts to establish clearly that it is unreasonable to use deadly force when the force is totally unnecessary to restrain a suspect or to protect officers, the public, or the suspect himself. Yet, as explained above, there is evidence that this is what happened here: even after it was readily apparent for a significant period of time (several minutes) that Mr. Weigel was fully restrained and posed no danger, the defendants continued to use pressure on a vulnerable person's

18

upper torso while he was lying on his stomach. A reasonable officer would know these actions present a substantial and totally unnecessary risk of death to the person. As the Supreme Court has stated:

> For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent.

Hope v. Pelzer, 536 U.S. 730, 739 . . . (2002) (citations and internal quotations omitted).

Weigel, 544 F.3d at 1154.

The next Tenth Circuit case is Casey v. City of Federal Heights, 509 F.3d 1278 (10th Cir. 2007). Casey, applying the Graham factors, held that it was unreasonable for an officer to use force against a non-violent misdemeanant suspect who was not resisting, fleeing, or dangerous. See id. at 1279-83. In that case, the suspect went to the parking lot of a municipal courthouse to retrieve money from his car to pay his traffic citation, while carrying his court file. See id. This court held that it would be unreasonable for an officer to tackle, taser and beat the plaintiff while he was on his way back into the courthouse in order to arrest him for the misdemeanor offense of removing a public record—the court file—from the courthouse. See id. Again, this case is a fortiori to our case because, although it shares some of the salient facts at issue in our case,[8] the suspect in Casey had not been physically restrained at the time

---

[8] The alleged violation was neither a felony nor violent and the suspect was not fleeing nor resisting arrest.

of the officer's application of force to him and yet, even in the absence of that additional fact, which would have added to the unreasonableness of the officer's conduct in that case, we held that the officer's conduct was unconstitutional.

In addition to deeming this use of force to be constitutionally unreasonable, which is the relevant piece here, Casey went on to hold that that Fourth Amendment violation was also clearly established at the time of that incident, in August 2003, again preceding Officer Moralez's conduct in our case by about twelve years. See id. 1283-85.

> We have located no case in which a citizen peacefully attempting to return to the courthouse with a file he should not have removed has had his shirt torn, and then been tackled, Tasered, knocked to the ground by a bevy of police officers, beaten, and Tasered again, all without warning or explanation. But we need not have decided a case involving similar facts to say that no reasonable officer could believe that he was entitled to behave as Officer Sweet allegedly did. Graham establishes that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest.

Casey, 509 F.3d at 1285.

Finally, in Dixon v. Richer, 922 F.2d 1456, 1457-59, 1462-63 (10th Cir. 1991), this court, applying the Graham factors, held that officers' use of force—kicking the plaintiff and hitting him in the stomach with a flashlight, and then choking and beating him—was unreasonable where officers did not suspect the plaintiff of committing a crime, but instead stopped him just to ask about another individual, the

plaintiff had already been frisked, "had his hands up against the van with his back to the officers, and was not making any aggressive moves or threats."[9]

Based on these three cases—Weigel, Casey, and Dixon—this court determined in McCoy that it was clearly established in 2011—four years before the incident at issue in our case—that "the Fourth Amendment prohibits the use of force without legitimate justification, as when a subject poses no threat or has been subdued." 887 F.3d at 1052 (emphasis added). McCoy went on to note that "Dixon and Casey involved" the use of excessive force—"beating, choking, and tasering"—in violation of the Fourth Amendment against "plaintiffs who were not suspected of serious crimes, posed little to no threat, and put up little to no resistance." Id. at 1052 n.21.

Officer Moralez, then, was surely on notice in August 2015, when he arrested McCowan, that his gratuitous application of force to McCowan, a fully subdued, compliant and non-threatening misdemeanant arrestee, violated the Fourth Amendment. We, therefore, uphold the district court's decision to deny Officer Moralez qualified immunity from McCowan's excessive force claim based on the "rough ride" he took in the back of Officer Moralez's patrol car.[10]

---

[9] Again this case is a fortiori to our case because the detainee had not previously been restrained and rendered unable to defend himself and yet in Dixon we held that the police conduct there violated the detainee's Fourth Amendment rights. That case does share other salient facts with our case. The detainee was not resisting nor attempting to flee; he was not suspected of a dangerous or violent crime; and he posed no threat to the officers.

[10] These cases all involve Fourth Amendment excessive force claims, like our case. But there may be circumstances where a Fifth, Eighth, or Fourteenth Amendment

21

**B. McCowan's claim alleging Officer Moralez was deliberately indifferent to McCowan's serious medical needs adequately alleges a clearly established Fourteenth Amendment violation**

McCowan alleged that Officer Moralez was deliberately indifferent to a serious medical need—his injured shoulders—while at the police station and until the officer transported McCowan to the detention center where medical care was available. Because this claim adequately alleges a clearly established Fourteenth Amendment violation, the district court correctly denied Moralez qualified immunity from it.

**1. McCowan's deliberate-indifference claim against Officer Moralez alleges a Fourteenth Amendment violation**

We begin by noting what McCowan's deliberate-indifference claim is <u>not</u>. It is not an excessive-force claim stemming from the rough ride to the police station. We have just addressed that excessive-force claim in the preceding section of this opinion. Nor has McCowan ever asserted any excessive-force claim based on his assertion that Officer Moralez and another officer injured McCowan's shoulders when they pulled him up by his arms, while handcuffed, in preparation for transporting McCowan to the detention center.

The deliberate-indifference claim we address here is also not based on any assertion that Officer Moralez handcuffed McCowan too tightly. McCowan alleged a

---

excessive force claims might also inform the analysis of whether the law is clearly established in a Fourth Amendment excessive force claim.

22

separate excessive-force claim on that basis and the district court granted Moralez qualified immunity from that claim. That decision is not at issue in this appeal.

Instead, the claim we address here is that Officer Moralez was deliberately indifferent to McCowan's serious medical needs—his injured shoulders—while the officer held McCowan at the police station and before the officer delivered McCowan to the detention center. But because medical care was available to McCowan at the detention center, even though he chose not to avail himself of it, and because McCowan asserts no deliberate-indifference claims against the detention center or any of its employees, his claim at issue here is that Officer Moralez was deliberately indifferent when he <u>delayed</u> McCowan's access to medical care during the time Moralez held McCowan at the police station (up to 150 minutes, according to McCowan), before transporting him to the detention center (which took between six and fifteen minutes).

As our starting point for considering this deliberate-indifference claim, it is the Fourteenth Amendment that applies to McCowan's claim alleging the denial of medical care after his warrantless arrest and before he was taken to be booked into the county detention center. <u>See</u> <u>Rife v. Okla. Dep't of Pub. Safety</u>, 854 F.3d 637, 641, 647 (10th Cir. 2017) (addressing arrestee's claim for denial of medical care following his arrest without a warrant).[11]

---

[11] We, thus, reject Officer Moralez's assertion that it is, instead, the Fourth Amendment that should govern here. In making that assertion, Officer Moralez relies on several district court decisions from the Ninth Circuit. But those cases address situations where officers injured or killed a suspect <u>while seizing him</u> and the

23

The Fourteenth Amendment "entitles pretrial detainees to the same standard of medical care owed to convicted inmates under the Eighth Amendment." Id. at 647. To succeed on his Fourteenth Amendment claim, then, McCowan "must show 'deliberate indifference to his serious medical needs.'" Clark v. Colbert, 895 F.3d 1258, 1267 (10th Cir. 2018) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976) (alteration omitted)). "The Supreme Court has established a two-pronged test for deliberate indifference claims. Under this test, a plaintiff must satisfy an objective prong and a subjective prong." Rife, 854 F.3d at 647 (citing Farmer v. Brennan, 511 U.S. 825, 834, 837-40 (1994)).[12]

---

suspect, or his survivors, then sued officers alleging they failed either to summon medical care promptly or to perform first aid. See Ostling v. City of Bainbridge Island, 872 F. Supp. 2d 1117, 1121-23, 1128-29 (W.D. Wash. 2012) (holding, in case where officers responding to check on confused man shot him, that Ninth Circuit applies Fourth Amendment to claims alleging both excessive force in seizing an individual and failure to take reasonable steps to secure medical care for individual injured while being seized); Mejia v. City of San Bernardino, No. EDCV 11-00452 VAP (DTBx), 2012 WL 1079341, at *2-*4, *5 n.12 (C.D. Cal. Mar. 30, 2012) (unreported) (noting, in case where responding officers shot disturbed armed man who attacked them, that "[t]he Ninth Circuit analyzes claims regarding deficient medical care during and immediately following an arrest under the Fourth Amendment"). Here, instead, McCowan claimed that Officer Moralez deprived him of needed medical attention while at the police station for injuries McCowan allegedly suffered after his arrest and before the officer delivered McCowan to the detention center. This situation is more analogous to Rife, where the Tenth Circuit applied the Fourteenth Amendment to a claim alleging an officer deprived an arrestee of necessary medical care after his warrantless arrest and while the officer transported the arrestee to the jail. See 854 F.3d at 641, 647-49.

[12] Recently this court noted that, after the Supreme Court's decision in Kingsley, 135 S. Ct. 2466 (2015), holding a Fourteenth Amendment excessive-force claim brought by a pretrial detainee is governed only by an objective reasonableness standard, see supra at 9 n.6, a split among circuits developed "on whether Kingsley [also] alters the standard for conditions of confinement and inadequate medical care claims brought

24

Turning first to the objective prong, "[t]he objective component of deliberate indifference is met if the harm suffered rises to a level sufficiently serious to be cognizable under the Cruel and Unusual Punishment Clause." Burke v. Regalado, 935 F.3d 960, 992 (10th Cir. 2019) (internal quotation marks omitted) (addressing Fourteenth Amendment claim). "[A] delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm. [T]he substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." Requena v. Roberts, 893 F.3d 1195, 1216 (10th Cir. 2018) (citation, internal quotation marks omitted), cert. denied, 139 S. Ct. 800, 202 L. Ed. 2d 589 (2019). Here, McCowan does not allege that any delay in Officer Moralez getting McCowan to the detention center, where he could have sought

by pretrial detainees." Burke, 935 F.3d 960, 991 n.9 (10th Cir. 2019). We have no occasion here to address that question, however, because no one makes such an argument. See Clark, 895 F.3d at 1269. Instead, even after Kingsley, both parties here applied the two-pronged objective/subjective test to McCowan's claim alleging that Officer Moralez was deliberately indifferent to McCowan's serious medical needs. In light of that, we follow suit. See Burke, 935 F.3d at 991 n.9 (declining, "in the absence of briefing from either party," to decide whether Kingsley has eliminated the subjective inquiry previously applicable to deliberate indifference claims brought by pretrial detainees). We do note, however, that a claim of deliberate indifference to serious medical needs by its very terminology seems to require both a subjective and an objective test. "Deliberate" certainly invokes a subjective analysis and "serious medical needs" invokes an objective analysis.

In any event, the objective/subjective standard that we apply "is more favorable" to Officer Moralez. Id. Even so, we conclude, under that objective/subjective standard, that McCowan has sufficiently supported a claim alleging that Officer Moralez was deliberately indifferent to McCowan's serious medical needs.

25

medical assistance, caused the need for McCowan to have shoulder surgery or otherwise exacerbated his shoulder injuries. But McCowan does assert that Officer Moralez's delay in getting McCowan to the detention center resulted in McCowan suffering up to several hours of excruciating pain. That is sufficient to meet the objective prong of the deliberate-indifference test. See Mata v. Saiz, 427 F.3d 745, 752-55 (10th Cir. 2005); see also Rife, 854 F.3d at 642-43, 653-54 (holding summary judgment based on qualified immunity was not warranted where § 1983 plaintiff presented evidence that he was in "substantial pain while he waited for medical attention"); Al-Turki v. Robinson, 762 F.3d 1188, 1193 (10th Cir. 2014) ("Although not every twinge of pain suffered as a result of delay in medical care is actionable, when the pain experienced during the delay is substantial, the prisoner sufficiently establishes the objective element of the deliberate indifference test.") (internal quotation marks omitted).

Next, turning to the subjective prong, that prong addresses whether Officer Moralez acted with "a sufficiently culpable state of mind." Requena, 893 F.3d at 1215 (internal quotation marks omitted). Here, the district court determined that, through his affidavit, McCowan presented evidence from which a jury could find that Officer Moralez knew that McCowan was suffering from significant shoulder pain—McCowan attested that he told the officer that he had previously injured his shoulder and that he re-injured that shoulder during the ride to the police station, and then at the police station McCowan repeatedly told the officer that he was in excruciating shoulder pain—yet Officer Moralez disregarded all of that information in delaying

26

McCowan medical care for approximately two hours until he was sent to the detention center. That is sufficient to meet the subjective prong of the deliberate indifference test. See Mata, 427 F.3d at 755 ("A prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused . . . unnecessary pain . . . . Even a brief delay may be unconstitutional."); see also Sealock v. Colorado, 218 F.3d 1205, 1201 n.5 (10th Cir. 2000) (noting that, although defendant prison official did not cause inmate's heart attack, "there is factual evidence from which a jury could conclude that the delay occasioned by his inaction unnecessarily prolonged appellant's pain and suffering").

We conclude, therefore, that McCowan succeeded in alleging a claim that Officer Moralez was deliberately indifferent to McCowan's serious medical needs. Like the district court, we note that McCowan may have difficulty proving his claim to a jury, in light of the records from the detention center indicating that when he arrived there, McCowan did not complain of pain and did not seek any medical care there. Nevertheless, McCowan has alleged enough for his Fourteenth Amendment deliberate-indifference claim to survive summary judgment at this stage of the proceedings.

**2. This constitutional violation was clearly established by August 2015**

The district court further concluded that Officer Moralez's alleged deliberate indifference to McCowan's "considerable" shoulder pain stated a clearly established constitutional violation. We agree.

In Olsen v. Layton Mills Mall, 312 F.3d 1304 (10th Cir. 2002), decided years before the events at issue here occurred, Carl Olsen was arrested for fraudulently using a credit card. Id. at 1309-10. Olsen suffered from obsessive compulsive disorder ("OCD") which can cause panic attacks. He had a panic attack while the arresting officer was transporting Olsen to the jail. Id. Olsen told the officer twice that he was having a panic attack, but the officer ignored him. Id. at 1310, 1317. The Tenth Circuit held that Olsen adequately asserted a § 1983 claim against the arresting officer for the denial of medical care sufficient to survive summary judgment. Id. at 1317. Regarding the objective prong of that deliberate-indifference claim, this court held that a jury could find that obsessive compulsive disorder was "sufficiently serious." Id. at 1316. As for the subjective prong, Olsen held that a reasonable jury could find that the officer knew of and disregarded "an excessive risk to [Olsen's] health." Id. at 1317. In reaching this conclusion, the Tenth Circuit acknowledged that "OCD does not manifest itself as visibly as a bloody nose; rather, like a heart attack victim who remains on his feet, its characteristics are subtler and consequently more capable of being described by the sufferer than noticed by an outsider." Id. Nevertheless, this court determined that a jury could find in that case that the officer "may have known of—and disregarded—an excessive risk to [Olsen's] health," based on Olsen's "allegation that he twice told Officer King that he

was having a panic attack, coupled with Officer King's admission that [Olsen] mentioned prior health problems."  Id.[13]

Olsen is sufficiently analogous to the situation at issue here to have provided Officer Moralez with notice that his conduct, as McCowan alleges it, was unconstitutional.  McCowan told Officer Moralez that he had a prior shoulder injury that was sufficiently serious to be the subject of a social security disability claim.  After being tossed about the back of the patrol car while handcuffed but otherwise unrestrained, McCowan complained to Officer Moralez repeatedly that he had re-injured his shoulder and was in "excruciating" pain from that injury.  Like the panic attack in Olsen, the pain McCowan suffered was not visible to Officer Moralez, but like Olsen, McCowan repeatedly told the officer that he was in excruciating pain.  Moreover, McCowan's wrists turned purple and he was unable to stand up straight when the officer ordered him to do so, further corroborating McCowan's pain complaints.

Sealock v. Colorado, 218 F.3d 1205 (10th Cir. 2000), lends further support for our decision.  In that Eighth Amendment case, convicted prisoner Richard Sealock complained repeatedly of "crushing" chest pain, difficulty breathing, sweating, and vomiting during the course of several days before prison officials sent him to the hospital where it was discovered that he had suffered a major heart attack.  Id. at 1207-09.  The Tenth Circuit held, among other things, that Sealock had established a

---

[13] Officer Moralez incorrectly asserts that this analysis in Olsen addressed only Olsen's claim against the municipality that employed the arresting officer.

claim for deliberate indifference to his serious medical needs against one jail employee for delaying Sealock's treatment. Id. at 1209-12. Although Sealock could not establish that the delay in treatment caused him any harm that was in addition to the harm already caused by the heart attack, Sealock

> presented evidence that he suffered from severe chest pain which he reasonabl[y] believed was caused by a heart attack. The pain and suffering imposed by [Defendant] Barrett's failure to get him treatment lasted several hours. The Eighth Amendment forbids "unnecessary and wanton infliction of pain.' Wilson v. Seiter, 501 U.S. 294, 297 . . . (1991) (emphasis added) . . . . Certainly, not every twinge of pain suffered as the result of delay in medical care is actionable. The evidence in this case, however, sufficiently establishes the objective element of the deliberate indifference test.

Sealock, 218 F.3d at 1210.

Sealock, then, lends some support to McCowan's claim that Officer Moralez's conduct in denying him medical care caused him "excruciating pain" for several hours. But it is Olsen that is sufficiently analogous to the situation at issue here to have placed Officer Moralez on notice that his conduct (as McCowan alleges it) unconstitutionally deprived McCowan of medical care needed for a serious medical need.[14]

### 4. Conclusion as to McCowan's Fourteenth Amendment claim for the deprivation of medical care for a serious medical need

_____

[14] Olsen and Sealock, which involved a § 1983 plaintiff's subjective complaints of pain and panic attacks further support our rejection of Officer Moralez's assertion that he could not have violated McCowan's constitutional rights because the officer did not have any verifiable information, apart from McCowan's "self-serving" statements, that McCowan was at risk for injury to his shoulder (Aplt. Reply Br. 15-16).

Moralez adequately alleged that Officer Moralez violated the Fourteenth Amendment by his deliberate indifference to McCowan's considerable shoulder pain while McCowan was being held at the police station. Moreover, this constitutional violation was clearly established at the time of this incident, August 2015. The district court, therefore, properly denied Officer Moralez qualified immunity on this claim. It will remain McCowan's obligation, of course, to prove the remedial value of this unnecessary pain he alleged the officer caused McCowan for the relatively short duration of time until he was transported to the detention center, but that is a matter for trial.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's decisions to deny Officer Moralez qualified immunity on both McCowan's excessive force claim, based on the "rough ride" in the patrol car, and McCowan's claim alleging deliberate indifference to his considerable shoulder pain while the officer kept McCowan at the police station. We REMAND this case to the district court for further proceedings consistent with this decision.