FILED
**United States Court of Appeals**
**Tenth Circuit**

**January 31, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

TRAVIS SALWAY,

    Plaintiff - Appellant,

v.

ERIC NORRIS,

    Defendant - Appellee.

No. 21-8055
(D.C. No. 2:20-CV-00115-MLC)
(D. Wyo.)

_____

## ORDER AND JUDGMENT*

_____

Before **BACHARACH**, **McHUGH**, and **MORITZ**, Circuit Judges.

_____

Travis Salway appeals an order granting Officer Eric Norris's motion for summary judgment on qualified-immunity grounds. Finding no violation of clearly established law, we affirm.

## Background

After a night of drinking in August 2018, Salway and his wife found themselves arguing outside of a bar in Cheyenne, Wyoming.[1] Their argument escalated, prompting the bar owner and bar patrons to intervene. The owner

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. _See_ Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

[1] Surveillance cameras from the bar's parking lot, as well as a dashcam from a police patrol car, captured much of the events.

attempted to forcibly remove Salway from the premises. Salway responded by grabbing the owner's legs and pinning him to the ground. The patrons then pulled Salway off the owner, and a scuffle ensued. During the scuffle, Salway sustained a visibly protruding broken finger. The patrons struggled to subdue Salway, but eventually, despite his kicking and thrashing, they managed to hold him down until three police officers arrived about 15 minutes later.

When the officers arrived, they at first did not interfere with the patrons holding Salway down. But when Salway again began to kick and thrash, the officers intervened to assume control of the situation. As they did so, Salway kicked one of the officers. The situation then quickly deteriorated. Salway continued to kick and thrash, and the officers returned several blows to his body. It was not until the three officers managed to hold Salway on the ground facedown, position his hands behind his back, and place handcuffs on him that the altercation ended—at least for the time being.

A short time later, Norris arrived at the scene in response to one of the officer's request for backup. He believed the situation was serious because the backup request came from a senior officer. Upon arriving, Norris saw paramedics with a gurney and two officers holding Salway down. Because of Salway's prior kicking and thrashing, Norris told the officers that they had to restrain and transport Salway either in a WRAP (a restraint device that prevents movement during transportation) or on the gurney. Aware that Salway had a broken finger and required

2

medical attention, Norris and the officers determined that the best course of action would be to restrain and transport him on the gurney.

Norris and one of the officers lifted Salway off the ground and moved him towards the gurney. Salway then stumbled and fell onto the gurney in a seated position, with his legs hanging off to the side and with his hands behind his back positioned away from the gurney to avoid adding pressure to his broken finger. From there, Norris and a third officer lifted Salway's legs onto the gurney, causing Salway—still handcuffed with his hands behind his back—to fully recline on the upright gurney and apply pressure to his injured finger. Almost immediately, Salway, once again, began to kick and thrash. He screamed, kicked, and raised his head upwards towards Norris. Within seconds, Norris struck Salway twice in the face, first with an open hand and, moments later, with a closed fist. The situation, at last, subsided, and Salway made no further movements.

Salway sued Norris under 42 U.S.C. § 1983, alleging that Norris used excessive force in violation of the Fourth Amendment when he struck Salway in the face with a closed fist.[2] After discovery, Norris asserted qualified immunity and

---

[2] The district court construed Salway's claim as challenging Norris's closed-fist strike, not the initial open-hand slap. Because Salway does not dispute that characterization on appeal, we similarly construe his claim as limited to the second blow. In addition, we do not address Salway's separate claim for unlawful seizure, as Salway does not develop any argument challenging the district court's decision to grant summary judgment for Norris on that claim. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief.").

moved for summary judgment. The district court (a magistrate judge presiding with the parties' consent) granted Norris's motion, and Salway now appeals.

## Analysis

We review the district court's grant of summary judgment on qualified-immunity grounds de novo. *McCoy v. Meyers*, 887 F.3d 1034, 1044 (10th Cir. 2018). When applying this standard, we view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences therefrom in the nonmoving party's favor. *Id.* "In qualified[-]immunity cases, this usually means adopting . . . the plaintiff's version of facts." *Scott v. Harris*, 550 U.S. 372, 378 (2007). But this general principle does not apply when "there is *clear contrary* video evidence of the incident at issue." *Est. of Taylor v. Salt Lake City*, 16 F.4th 744, 757 (10th Cir. 2021) (quoting *Thomas v. Durastanti*, 607 F.3d 655, 659 (10th Cir. 2010)).

"When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). We need not address the two prongs in sequential order. *Est. of Taylor*, 16 F.4th at 758. And here, like the district court, we need only address the second prong—whether the right was clearly established.

To determine whether the right was clearly established, "we ask whether 'the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Est. of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741

4

(2011)). The right cannot be defined "at a high level of generality." *al-Kidd*, 563 U.S. at 742. That is, "[t]he dispositive question is 'whether the violative nature of [a defendant's] particular conduct is clearly established.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (emphasis omitted) (quoting *al-Kidd*, 563 U.S. at 742). As a result, to show that a right was clearly established, a plaintiff must ordinarily identify "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Fogarty v. Gallegos*, 523 F.3d 1147, 1161 (10th Cir. 2008) (quoting *Medina v. City & Cnty. of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992)).

Salway challenges the district court's determination that Norris did not violate clearly established law by striking him in the face with a closed fist as he screamed, kicked, and thrashed while officers placed him on the gurney. As in the district court, Salway argues that Norris's conduct violated the clearly established principle that "officers may not continue to use force against a suspect who is effectively subdued."[3] Aplt. Br. 16 (quoting *Perea v. Baca*, 817 F.3d 1198, 1204 (10th Cir. 2016)).

For support, he cites several cases involving officers who used force against suspects who were subdued and had ceased engaging in any resistance or threatening

---

[3] Salway also suggests that Norris violated the clearly established principle that "officers are prohibited from using deadly force against a person when it is apparent that the person poses no physical threat to the officers or others." Aplt. Br. 18. But because Salway does not contend that Norris applied deadly force, we fail to see the relevance of that principle.

behavior. In *Perea*, for instance, officers continued tasing a suspect who they had "effectively subdued" by "get[ting him] on the ground on his stomach, with both officers on top of him." 817 F.3d at 1201, 1204. Similarly, the officer in *Fancher v. Barrientos* shot multiple times at a suspect fleeing in a vehicle even though the suspect was "no longer able to control the vehicle, to escape, or to fire a [weapon], and thus, may no longer have presented a danger." 723 F.3d 1191, 1201 (10th Cir. 2013). The remaining cases Salway cites likewise involved force used against effectively subdued or nonthreatening individuals who did not engage in additional movements requiring further efforts to fully restrain them. *See Emmett v. Armstrong*, 973 F.3d 1127, 1136, 1138–39 (10th Cir. 2020) (concluding that officer violated clearly established law by tasing suspect who "was lying on his back on the ground, visibly relaxed, laughing, and had ceased any active resistance"); *McCoy*, 887 F.3d at 1052 (reversing summary judgment for officers who continued using force "after [plaintiff] was rendered unconscious, handcuffed, and zip-tied"); *Fogarty*, 523 F.3d at 1162 (affirming order denying summary judgment for officers who used "force adequate to tear a tendon . . . against a fully restrained arrestee"); *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1285 (10th Cir. 2007) (holding that force used against "a citizen peacefully attempting to return to the courthouse with a file" violated clearly established law); *Dixon v. Richer*, 922 F.2d 1456, 1463 (10th Cir. 1991) (concluding that officer violated clearly established law by striking individual who "had already been frisked, had his hands up against [a] van with his back to the officers, and was not making any aggressive moves or threats"); *Herrera v.*

6

*Bernalillo Cnty. Bd. of Cnty. Comm'rs*, 361 F. App'x 924, 929 (10th Cir. 2010) ("[T]he law clearly established that the gratuitous use of force against a person who is not resisting arrest violates the Fourth Amendment."); *Gouskos v. Griffith*, 122 F. App'x 965, 976–77 (10th Cir. 2005) (concluding that factual disputes precluded summary judgment for officer who used force on arrestee who "was lying subdued and handcuffed").

But here, the undisputed facts are readily distinguishable from those cases in at least one material respect. *See Irizarry v. Yehia*, 38 F.4th 1282, 1294 (10th Cir. 2022) (explaining that precedent is on point, for purposes of clearly established law, "if it involves *materially similar conduct*" (quoting *Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017))). Video evidence plainly shows, and neither party disputes, that although officers had initially restrained Salway, he began to kick and thrash again just before the challenged force occurred, when Norris and nearby officers and paramedics tried to place him on the gurney. These additional, postrestraint movements did not occur in the cases Salway cites. *See, e.g.*, *Emmett*, 973 F.3d at 1131 (noting that suspect "made no further movements indicating an attempt to run or fight back" after officer tackled him to the ground). And even if a jury could ultimately find, as Salway insists, that Norris used excessive force despite Salway's additional movements, Salway supplies no Supreme Court or Tenth Circuit authority clearly establishing that such conduct amounts to a constitutional violation.[4] It can

_____

[4] It therefore makes no difference if, as Salway argues, a factual dispute remains about whether his additional movements were simply a reaction to pain from

hardly be said, then, that "existing precedent . . . place[d] the unconstitutionality of [Norris's] alleged conduct 'beyond debate,'" *id.* at 1137 (quoting *McCowan v. Morales*, 945 F.3d 1276, 1285 (10th Cir. 2019)), and that "every reasonable offic[er] would have understood that" such conduct constituted excessive force, *Est. of Booker*, 745 F.3d at 411 (quoting *al-Kidd*, 563 U.S. at 741). Given the Supreme Court's repeated admonition that "[t]he question of whether a right is clearly established must be answered 'in light of the specific context of the case,'" *Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)), we cannot conclude that Norris's conduct violated a clearly established constitutional right in this case.

### Conclusion

In sum, Salway has not shown that his right to be free from excessive force was clearly established under the circumstances. Because that conclusion entitles Norris to qualified immunity, we affirm the district court's summary-judgment order.

Entered for the Court

Nancy L. Moritz
Circuit Judge

---

his broken finger rather than a continuation of his earlier resistance. Even if resolving that purported dispute in his favor would somehow establish a constitutional violation on the first qualified-immunity prong, it would not remedy his failure on the second prong to provide Supreme Court or Tenth Circuit precedent showing that such a constitutional violation was clearly established. *See Irizarry*, 38 F.4th at 1294.