**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**August 16, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

HYRUM JAMES GEDDES,

    Plaintiff - Appellant,

v.

WEBER COUNTY; WAYNE MOSS;
ROBERT SHANER; KARLEE DRAKE;
JAMIE TOONE,

    Defendants - Appellees.

No. 20-4083
(D.C. No. 1:18-CV-00136-HCN)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **BACHARACH**, and **CARSON**, Circuit Judges.
_____

Mr. Hyrum Geddes sued Weber County and several officers in the Weber

County Sheriff's Department for an excessive-force incident that occurred while he

was detained at the Weber County Correctional Facility but before a probable cause

hearing. Mr. Geddes brought his claim pursuant to 42 U.S.C. § 1983 and alleged the

officers had violated his Fourteenth Amendment rights. The question before us is not

whether the officers' actions indeed constituted excessive force. It is instead whether

Mr. Geddes can bring an excessive-force claim—as an arrestee—under the

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Fourteenth Amendment. We conclude that he cannot. And we, therefore, agree with the district court's grant of summary judgment and conclusion that Mr. Geddes did not have "a cognizable claim under the Fourteenth Amendment" because the alleged excessive force did not occur "after a determination of probable cause and before conviction." *Geddes v. Weber Cnty.*, No. 1:18-cv-00136, 2020 WL 4437405, at *2 (D. Utah Aug. 3, 2020) (unpublished). Only the Fourth Amendment supplied a valid legal basis for Mr. Geddes's § 1983 claim, and yet, as we will discuss below, Mr. Geddes stubbornly refused to concede this fact.

We have jurisdiction under 28 U.S.C. § 1291. Reviewing the district court's grant of summary judgment de novo and for the reasons that follow, we affirm.

# I

A Utah Highway Patrol Trooper pulled over Mr. Geddes for speeding in July 2017. Smelling alcohol, and noticing that Mr. Geddes slurred his speech, the trooper searched the vehicle. The trooper found unopened cans of beer and two rifles. The trooper arrested Mr. Geddes for speeding, driving under the influence, and carrying a dangerous weapon while under the influence of alcohol. The trooper then took Mr. Geddes to the Weber County Correctional Facility.

When he arrived at the facility, Mr. Geddes was searched and placed in a holding cell. In his operative complaint,[1] Mr. Geddes alleged that officers demanded

---

[1] The operative complaint is Mr. Geddes's amended complaint, filed on February 11, 2019. For simplicity's sake, we refer to the amended complaint herein simply as Mr. Geddes's "complaint"; as relevant to the matters we address and resolve here, there is no material difference between the two complaints.

that he remove his boots and then "rushed him, grabbed him, and violently attacked [him], . . . slamm[ing] his head into [a] brick wall and concrete floor with substantial, potentially deadly force." Aplt.'s App. at 35 (Am. Compl., filed Feb. 11, 2019). The officers then forcibly removed Mr. Geddes's boots. An incident report regarding the officers' use of force shows that it occurred soon after 4:00 p.m. A magistrate judge made a probable cause determination shortly after 5:30 p.m.

As a result of the officers' actions in removing his boots, Mr. Geddes claimed that he later suffered "blurry vision, cognitive difficulties, and substantial pain to the back and side of his head." *Id.* at 39. Mr. Geddes eventually filed a § 1983 action against Weber County and four officers in the Weber County Sheriff's Department. In his complaint, Mr. Geddes alleged that the officers "employed deadly force" against him in violation of the Fourteenth Amendment. *Id.* at 42. He further alleged that Weber County "engaged in deliberate indifference and/or reckless disregard of the deprivation of [his] rights under the Fourteenth Amendment." *Id.* at 44.

Defendants filed a motion for summary judgment. They argued that Mr. Geddes's complaint did not "state a cognizable cause of action" because it invoked the Fourteenth Amendment "as the sole basis for the alleged legal violation." *Id.* at 55, 57–58 (Defs.' Mot. for Summ. J., filed Oct. 18, 2019). Defendants insisted that because Mr. Geddes was an "'arrestee' who was detained without a warrant and prior to a judicial probable cause determination," the only valid basis for his

excessive-force claim was the Fourth Amendment, not the Fourteenth Amendment. *Id.* at 58. Defendants also argued that if Mr. Geddes had properly pleaded his claim under the Fourth Amendment they still would be entitled to qualified immunity. *See Id.* at 294–97 (Defs.' Reply Mem. in Supp. of Mot. for Summ. J., filed Nov. 15, 2019).

In response, Mr. Geddes said that he could bring his claim "only pursuant to the Fourteenth Amendment, because that Amendment incorporates the Fourth Amendment's protections against the states and their political subdivisions." *Id.* at 114 n.2 (Pl.'s Mem. in Opp.'n to Defs.' Mot. for Summ. J., filed Nov. 1, 2019). Mr. Geddes made two additional related arguments. First, he stated that no matter which amendment he cited in his complaint, Defendants were "put on notice that [he] was pursuing a claim under Section 1983 for use of excessive force," because "the Amended Complaint repeatedly alleges that the Individual Defendants violated Mr. Geddes'[s] rights when they used force that was 'objectively unreasonable' in light of the circumstances presented. That is the Fourth Amendment standard applicable to excessive force claims." *Id.* (quoting *id.* at 31, 37, 38).

Second, he insisted that because "there is really no practical difference between application of the standards applicable under the Fourth and Fourteenth Amendment to a claim of use of excessive force," any error in pleading his claim as a Fourteenth Amendment violation was immaterial. *Id.* at 143 n.6; *see also id.* at 138–39 n.5 ("[O]ne could make an [argument] that there was [a] continuing seizure and apply the Fourth Amendment, as Defendants say we should do; or, alternatively, one

4

could also argue that the Fourteenth Amendment should apply because Mr. Geddes had already been seized. In reality, . . . in light of the facts presented here, there is no practical difference in the outcome in application of the two standards." (citation omitted)). Finally, Mr. Geddes argued at length that Defendants were not entitled to qualified immunity.

The district court granted Defendants' motion for summary judgment. It found that Mr. Geddes "d[id] not have a cognizable claim under the Fourteenth Amendment" because the alleged excessive force occurred before a probable cause determination.[2] *Geddes*, 2020 WL 4437405, at *2. The court also rejected Mr. Geddes's argument that he pleaded a valid basis for his claim because the Fourteenth Amendment incorporates the Fourth Amendment against state and local officials. According to the court, "[i]t would follow from Mr. Geddes's argument that merely invoking the Fourteenth Amendment would suffice as notice for any number of constitutional claims—from free exercise or free speech claims to Second Amendment or takings claims, to claims based on any of the various rights relating to

---

[2]    The district court also disagreed with Mr. Geddes's argument that at the time of the incident he was a pretrial detainee. *Geddes*, 2020 WL 4437405, at *3 n.3. Although Mr. Geddes argued he "'had already been seized . . . based on the Trooper's finding of probable cause' and that the subsequent judicial hearing was not an 'actual probable cause hearing [but] merely a judicial stamp of approval on the Trooper's finding of probable cause for the arrest and detention,'" the district court explained, "Mr. Geddes offers no authority in support of this novel theory, and the court is aware of none." *Id.* (alteration and omission in original) (quoting Aplt.'s App. at 138–39 n.5).

criminal procedure set forth in the Bill of Rights," upending federal pleading requirements. *Id.* at *3.

The court also disagreed with Mr. Geddes that his complaint put Defendants on notice of his precise claim. As the court explained, "the complaint nowhere references the Fourth Amendment, and in the specific context of excessive force claims, there is a significant difference between the rights secured by the Fourth Amendment and those secured by the Fourteenth Amendment"; therefore, the complaint did not put Defendants on notice of his Fourth Amendment claim. *Id.* Finally, and relatedly, the district court rejected Mr. Geddes's argument that there was no practical difference between Fourth and Fourteenth Amendment claims of excessive force. In doing so, it emphasized that the choice of amendment matters, especially here, because the "test of excessive force under the Fourth Amendment is different than under the Fourteenth." *Id.* at *4. The court consequently granted Defendants' motion for summary judgment and dismissed Mr. Geddes's claim with prejudice.

Mr. Geddes then brought this timely appeal.

**II**

Our resolution of this appeal will proceed in three steps. First, we will explain why a plaintiff must precisely identify the constitutional basis for a § 1983 excessive-force claim. Because different amendments supply the basis for suit at different phases of the criminal justice process, we will explain which amendment properly applies at each phase and the unique interests that each amendment protects.

Next, we will establish that Mr. Geddes was an "arrestee" when Weber County officers allegedly used excessive force against him; that is, the incident in question occurred before a probable cause determination. And as a result, the Fourth Amendment—not the Fourteenth Amendment—provides the only valid basis for his excessive-force claim. We will show that Mr. Geddes has only ever pleaded his claim as a Fourteenth Amendment violation. This error—which Mr. Geddes has maintained throughout the duration of his suit—forecloses the possibility of granting him relief.

Finally, we will consider three additional arguments made by Mr. Geddes for why the district court erred in granting summary judgment to Defendants. We will explain why none are persuasive, and why we therefore affirm the district court's grant of summary judgment.

### A

"Our first task in any § 1983 suit alleging a constitutional violation is 'to isolate the precise constitutional violation with which [the defendant] is charged.'" *Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010) (alteration in original) (quoting *Baker v. McCollan*, 443 U.S. 137, 140 (1979)). After all, "§ 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker*, 443 U.S. at 144 n.3); *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) ("§ 1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere, *i.e.*, rights independently 'secured by the Constitution and

laws' of the United States."). As a result, not all "claims brought under § 1983 are governed by a single generic standard." *Graham*, 490 U.S. at 393. Instead, we must judge the "validity of the claim . . . by reference to the specific constitutional standard which governs that right." *Id.* at 394; *see United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) ("*Graham* simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."); *see also Frohmader v. Wayne*, 958 F.2d 1024, 1026 (10th Cir. 1992) ("All excessive force claims are not governed by a single generic standard. Our analysis must begin with identification of the specific constitutional right infringed . . . .").

It is especially critical to identify the precise constitutional basis for an excessive-force claim because it "can be maintained under the Fourth, Fifth, Eighth, or Fourteenth Amendment . . . and each carries with it a very different legal test." *Est. of Booker v. Gomez*, 745 F.3d 405, 418–19 (10th Cir. 2014) (quoting *Porro*, 624 F.3d at 1325); *see also Emmett v. Armstrong*, 973 F.3d 1127, 1134 (10th Cir. 2020) ("Excessive force claims are cognizable under the Fourth, Fifth, Eighth, and Fourteenth Amendments."); *accord DeLade v. Cargan*, 972 F.3d 207, 210 (3d Cir. 2020) ("Simply put, if [the plaintiff's] claim of unlawful arrest and pretrial detention sounds in the Fourth Amendment, then it cannot be asserted under the Due Process Clause of the Fourteenth Amendment."). The appropriate amendment for a § 1983 excessive-force action "depend[s] on 'where the plaintiff finds himself in the

8

criminal justice system' at the time of the challenged use of force." *McCowan v. Morales*, 945 F.3d 1276, 1282–83 (10th Cir. 2019) (quoting *Est. of Booker*, 745 F.3d at 419); *see also Porro*, 624 F.3d at 1325 ("The choice of amendment matters. Excessive force claims can be maintained under the Fourth, Fifth, Eighth, or Fourteenth Amendment—all depending on where the defendant finds himself in the criminal justice system . . . .").

We have previously explained at length which amendment applies to excessive-force claims at each phase of the criminal justice process and what type of government intrusion the corresponding amendment protects against. Because the Fourth Amendment protects against unreasonable searches and seizures, it applies at the earliest phase, beginning with any claim that "arises in the context of an arrest or investigatory stop of a free citizen." *Emmett*, 973 F.3d at 1134 (quoting *Graham*, 490 U.S. at 394); *see also Est. of Booker*, 745 F.3d at 419 ("Any force used 'leading up to and including an arrest' may be actionable under the Fourth Amendment's prohibition against unreasonable seizures." (quoting *Porro*, 624 F.3d at 1325)).

The Supreme Court has made clear that "[b]ecause the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham*, 490 U.S. at 395. The Fourth Amendment continues to apply up to the moment of a judicial determination as to "whether there was probable cause to charge [an arrestee] with a crime." *McCowan*, 945 F.3d at 1283; *see also Est. of*

9

*Booker*, 745 F.3d at 419 (explaining that the Fourth Amendment governs excessive-force claims related to incidents that occurred "prior to any probable cause hearing" (emphasis omitted) (quoting *Austin v. Hamilton*, 945 F.2d 1155, 1160 (10th Cir. 1991), *abrogated on other grounds by Johnson v. Jones*, 515 U.S. 304 (1995))).

At the next phase of the criminal justice process, "we turn to the due process clauses of the Fifth or Fourteenth Amendment and their protection against arbitrary governmental action by federal or state authorities." *Colbruno v. Kessler*, 928 F.3d 1155, 1162 (10th Cir. 2019) (quoting *Porro*, 624 F.3d at 1326); *see id.* at 1161 ("When we speak of a Fourteenth Amendment claim in this opinion, we will be referring to a claim that is *not* based on incorporating the Bill of Rights into that amendment, but rather is based on the Due Process Clause in itself."). Because "[a] person lawfully committed to pretrial detention has not been adjudged guilty of any crime" and "[h]e has had only a 'judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest,'" the government "may detain him to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell v. Wolfish*, 441 U.S. 520, 536–37 (1979) (third and fourth alterations in original) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975)). Put another way, the Supreme Court has made clear that under the Fourteenth Amendment a "detainee may not be *punished* prior to an adjudication of guilt in accordance with due process of law." *Colbruno*, 928 F.3d at 1162 (quoting *Bell*, 441 U.S. at 535). So, "a pretrial

10

detainee can establish a due-process violation by 'providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose.'" *Id.* at 1163 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)).[3]

It is undoubtedly "well-established that the Fourteenth Amendment governs any claim of excessive force brought by a 'pretrial detainee'—one who has had a 'judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest.'" *Est. of Booker*, 745 F.3d at 419 (alterations in original) (quoting *Bell*, 441 U.S. at 536); *McCowan*, 945 F.3d at 1283 n.6 ("The Fourteenth, instead of the Fourth, Amendment, applies to an excessive-force claim brought by a pretrial detainee . . . .").

At the post-conviction phase of the criminal justice process, the Eighth Amendment applies. *See Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977)

---

[3]    As we allude to *infra*, in *Kingsley*, the Supreme Court clarified approximately two years before the events at issue here that the standard that a pretrial detainee must use to establish an excessive-force claim under the Due Process Clause is an objective one: the detainee must establish that "the officers' use of that force was *objectively* unreasonable"—not that "the officers were *subjectively* aware that their use of force was unreasonable." *Kingsley*, 576 U.S. at 391–92; *accord McCowan*, 945 F.3d at 1283 n.6 ("[T]he Supreme Court has now clarified that only the objective (and not a subjective) standard applies to a pretrial detainee's Fourteenth Amendment excessive-force claim."). In Mr. Geddes's view, *see infra* Part II.C.1, this holding lends credence to the proposition that there is no material difference between the liability standard that governs excessive-force claims brought under the Due Process Clause and like claims pursued under the Fourth Amendment—claims that have long been held to be governed by an objective standard, *see, e.g.*, *Graham*, 490 U.S. at 388. As we demonstrate, Mr. Geddes's view is misguided.

11

("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions."). Thus, "prisoners already convicted of a crime who claim that their *punishments* involve excessive force must proceed under the more restrictive terms of the Eighth Amendment's 'cruel and unusual punishments' clause." *Porro*, 624 F.3d at 1325–26; *see also Est. of Booker*, 745 F.3d at 419 ("[C]laims of excessive force involving convicted prisoners arise under the Eighth Amendment."). In contrast to excessive-force cases involving pretrial detainees where the Fourteenth Amendment protects against the state imposing *punishment* prior to an adjudication of guilt, the Eighth Amendment protects against the infliction of certain types of punishment—that is, "cruel and unusual punishments." Therefore, in the Eighth Amendment context, "we ask only whether the 'force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Porro*, 624 F.3d at 1326 (quoting *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992)).

As will be discussed further below, not only do the different amendments provide protection at different parts of the criminal justice process, but more importantly for present purposes, the different amendments protect against unique forms of potential governmental intrusion on the protected right. This underscores the need for litigants to identify the correct amendment under which they seek relief.

**B**

Mr. Geddes was a mere arrestee when Weber County officers allegedly used excessive force against him. No judicial determination of probable cause had yet

12

been made. Instead, he simply had been arrested by a Utah Highway Patrol Trooper and transported to the Weber County Correctional Facility. There, he was searched and placed in a holding cell. An incident report filed later confirms that the alleged excessive force occurred soon after 4:00 p.m. Yet a magistrate only made a probable cause determination shortly after 5:30 p.m. The alleged excessive force, then, clearly occurred "after [Mr. Geddes] had been arrested without a warrant and before any determination as to whether there was probable cause to charge him with a crime." *McCowan*, 945 F.3d at 1283. In fact, Mr. Geddes does not deny this. Thus, because Mr. Geddes was an arrestee, only the Fourth Amendment can supply the basis for his § 1983 excessive-force claim.

However, Mr. Geddes only ever pleaded his claim as a Fourteenth Amendment violation. *See, e.g.*, Aplt.'s App. at 42–43 (claiming that Defendants violated "clearly established . . . constitutional rights" that were "secured by the Fourteenth Amendment of the United States Constitution"). And in his opposition to Defendants' motion for summary judgment, he did not concede this error. He instead argued that he could indeed seek relief under the Fourteenth Amendment. *Id.* at 114 n.2 (asserting that it "borders on the frivolous" for Defendants to suggest that Mr. Geddes cannot base his § 1983 claim under the Fourteenth Amendment); *id.* ("Mr. Geddes'[s] claims can be brought only pursuant to the Fourteenth Amendment[] because that Amendment incorporates the Fourth Amendment's protections against the states and their political subdivisions. Accordingly, as written, the claims set out in Mr. Geddes'[s] Amended Complaint cite to the appropriate Amendment."

13

(citations omitted)).  Alternatively, Mr. Geddes argued that his choice of amendment did not matter.  *Id.* at 138–39 n.5 ("In reality, . . . in light of the facts presented here, there is no practical difference in the outcome in [the] application of the two standards."); *id.* at 143 n.6 ("[I]n light of the facts presented here, there is really no practical difference between [the] application of the standards applicable under the Fourth and Fourteenth Amendment to a claim of use of excessive force.").

On appeal, Mr. Geddes doubles down on this error and continues to suggest that the Fourteenth Amendment supplies a valid basis for his claim.  *See, e.g.*, Aplt.'s Opening Br. at 31–33; *see also id.* at 32–33 (arguing this court "should apply the factors set out by the Supreme [C]ourt in *Kingsley* [i.e., a case under the Due Process Clause] to the circumstances presented here"); *id.* at 35 ("[C]ontrary to the district court's conclusion, Mr. Geddes has stated a cognizable claim for relief—regardless of whether we cite to the Fourth or Fourteenth Amendment."); *id.* at 41 n.8 ("[A] line of demarcation that is more apropos would be to apply the Fourteenth Amendment, and the *Kingsley* factors, when, as here, the factual scenario actually calls for application of those factors rather than the factors set out in *Graham* to a seizure."). This is simply incorrect.  Mr. Geddes continues to cling to a constitutional amendment that provides him—as an arrestee—with no cognizable basis for a § 1983 excessive-force claim.  "The choice of amendment matters," *Porro*, 624 F.3d at 1325, and the amendment Mr. Geddes has chosen and has persisted in choosing dooms his § 1983 action.

**C**

Mr. Geddes makes three additional arguments for why the district court erred in granting summary judgment to Defendants. None are persuasive.

**1**

First, Mr. Geddes suggests that the legal standards for a Fourth Amendment excessive-force claim and a Fourteenth Amendment excessive-force claim are identical, and the district court erred in distinguishing between the two. *See, e.g.*, Aplt.'s Opening Br. at 8 ("[T]here is no difference between [the] application of the standards applicable under the Fourth and Fourteenth Amendment to a claim of use of excessive force."); *id.* at 27 ("The linchpin of the . . . district court's decision, is the distinction made by this Court in *Estate of Booker* between the differing standards applicable to the evaluation of a use of force against an arrestee under the Fourth Amendment and against a pretrial detainee under the Fourteenth Amendment. Reliance on that distinction, however, is misplaced."); *id.* at 34–35 ("The standard applicable to evaluating [excessive-force] claims—objective reasonableness—is the same whether we analyze the facts under the Fourth Amendment or the Fourteenth Amendment."). As a result, Mr. Geddes says it does not matter whether he pleaded his excessive-force claim as a Fourth Amendment or Fourteenth Amendment violation. Either way, he insists, the outcome of his suit would be the same because the applicable standard would be the same. [4]

---

[4]    In addition to arguing that the Fourth and Fourteenth Amendment excessive-force legal frameworks and standards are interchangeable, Mr. Geddes

15

doubles down on his argument, rejected by the district court, that this court should not wed itself to the "inflexible demarcation of when the Fourth Amendment ends and the Fourteenth Amendment begins" and should instead apply the Fourteenth Amendment standard to his situation. Aplt.'s Opening Br. at 38. To support this, he suggests that the excessive-force factors identified in *Graham* "do not really fit when, as here, the seizure has ended, custody has been transferred to a new entity, and force is used against a person being held by a detention facility," and instead "the factors set out by the Supreme Court in *Kingsley* as applicable to a pretrial detainee under the Fourteenth Amendment are a perfect fit to the situation presented here." *Id.* at 40; *see* Aplt.'s Reply Br. at 13 ("[T]he circumstances presented here actually call for application of the factors set out in *Kingsley*."). Further, he explains the dividing line recognized in *Booker* between arrestee and pretrial detainee—"one who has had a 'judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest'"—is debatable in light of the Supreme Court's decision in *Kingsley* that concluded the objective reasonableness standard applies to both. Aplt.'s Opening Br. at 41 n.8 (alterations in original) (quoting *Est. of Booker*, 745 F.3d at 419).

Although Mr. Geddes suggests that we should not "reach the issue of where a precise dividing line lies" between the amendments and notes the Supreme Court has not actually resolved this question, *id.*, he does not acknowledge that we have already drawn this line. We have explained that "the Fourth Amendment not only bars the use of excessive force during the making of an arrest, but such also bars the use of excessive force during a period of detention immediately following arrest and before the person is taken before a magistrate judge, or other judicial official, to determine whether the arrest and continued detention were based on probable cause." *Barrie v. Grand Cnty.*, 119 F.3d 862, 866 (10th Cir. 1997); *see also id.* ("[J]ust as the fourth amendment's strictures continue in effect to set the applicable constitutional limitations regarding both duration (reasonable period under the circumstances of arrest) and legal justification (judicial determination of probable cause), its protections also persist to impose restrictions on the treatment of the arrestee detained without a warrant." (emphasis omitted) (quoting *Austin*, 945 F.2d at 1160)). The Supreme Court's decision in *Kingsley* did not alter or disturb our precedent on this point. The Court in *Kingsley* spoke to the standard under which excessive-force claims should be analyzed—it did not consider where the Fourth Amendment begins and ends. Although Mr. Geddes is correct that the Supreme Court has not directly opined on "whether the Fourth Amendment continues to provide individuals with protection against the deliberate use of excessive physical force beyond the point at which arrest ends and pretrial detention begins," *Graham*, 490 U.S. at 395 n.10, most circuits have joined us in answering in the affirmative that Fourth Amendment protections continue up until a probable cause determination, *see Crocker v. Beatty*, 995 F.3d 1232, 1255 (11th Cir. 2021) (Newsom, J., concurring) ("If we're counting

16

Not so.  The Fourth Amendment and Fourteenth Amendment excessive-force

standards are not identical.  As Mr. Geddes rightly notes, both standards assess the

objective reasonableness of the use of force.  *See, e.g.*, Aplt.'s Opening Br. at 28

("[T]he Supreme Court has now clarified that only the objective (and not a

subjective) standard applies to a pretrial detainee's Fourteenth Amendment

excessive-force claim.  Thus, the same objective standard now applies to excessive-

force claims brought under either the Fourth or the Fourteenth Amendment."

(emphasis and bold-face font omitted) (citation omitted) (quoting *McCowan*, 945

F.3d at 1283 n.6)).  But beyond that, the two standards differ.[5]

---

noses, it seems fair to say that most circuits to have answered this question have lined
up behind the Fourth Amendment."), *cert. denied*, --- U.S. ----, 142 S. Ct. 845
(2022); *see also, e.g.*, *Aldini v. Johnson*, 609 F.3d 858, 866 (6th Cir. 2010)
(establishing "the line between Fourth and Fourteenth Amendment protection at the
probable-cause hearing" for those arrested without a warrant); *Pierce v. Multnomah
Cnty.*, 76 F.3d 1032, 1043 (9th Cir. 1996) (holding "that the Fourth Amendment sets
the applicable constitutional limitations on the treatment of an arrestee detained
without a warrant up until the time such arrestee is released or found to be legally in
custody based upon probable cause for arrest"); *Powell v. Gardner*, 891 F.2d 1039,
1044 (2d Cir. 1989) ("We think the Fourth Amendment standard probably should be
applied at least to the period prior to the time when the person arrested is arraigned or
formally charged, and remains in the custody (sole or joint) of the arresting officer.").
Therefore, Mr. Geddes's argument that he could seek the protection of the Fourteenth
Amendment before a probable cause hearing is also meritless.

[5]     Mr. Geddes claims that our holding in *McCowan v. Morales* means that
"the standards applicable to evaluation of a claim of excessive force[] no longer
matter[] for purposes of analyzing such a claim." Aplt.'s Opening Br. at 29 (citing
*McCowan*, 945 F.3d at 1283 n.6); *see McCowan*, 945 F.3d at 1283 n.6 ("The
distinction between arrestee and pretrial detainee is less important in this case
because the Supreme Court has now clarified that only the objective (and not a
subjective) standard applies to a pretrial detainee's Fourteenth Amendment
excessive-force claim.").  But in *McCowan*, we made clear that the distinction that no
longer mattered between an arrestee and pretrial detainee related to the application of

Under the Fourth Amendment, we determine the reasonableness of a use of force by "a careful balanc[e] of '"the nature and quality of the intrusion on the individual's Fourth Amendment interests,"' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)); *accord Emmett*, 973 F.3d at 1134. More specifically, "[i]n conducting this balancing, we consider the factors the Supreme Court clearly set forth in *Graham v. Connor*." *McCowan*, 945 F.3d at 1283. These three factors are "(1) 'the severity of the crime at issue,' (2) 'whether the suspect poses an immediate threat to the safety of the officers or others,' and (3) 'whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'" *McCoy v. Meyers*, 887 F.3d 1034, 1045 (10th Cir. 2018) (alteration in original) (quoting *Graham*, 490 U.S. at 396). Nevertheless, we must remain mindful that these factors are not exhaustive and the "proper application requires careful attention to the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396; *see, e.g.*, *Fisher v. City of Las Cruces*, 584 F.3d 888, 894 (10th Cir. 2009) (noting that *Graham* articulates "non-exclusive factors relevant to our excessive force inquiry").

---

the objective and subjective standards. *See McCowan*, 945 F.3d at 1283 n.6. Specifically, in *McCowan*, we reversed the district court's judgment because it "considered [the officer's] subjective intent." *Id.* Thus, nowhere in that case did we hold that the distinction between an arrestee and pretrial detainee no longer matters in *all* respects. More specifically, nowhere did we hold that there is no substantive difference in the particulars of the objective tests applied to these two classes of plaintiffs.

For a Fourteenth Amendment excessive-force claim, "[i]n deciding whether the force deliberately used is, constitutionally speaking, 'excessive,'" we likewise "use an objective standard only." *Kingsley*, 576 U.S. at 396. *But* the Supreme Court has identified a different set of considerations that "bear on the reasonableness or unreasonableness of the force used" under the Fourteenth Amendment. *Id.* at 397. These considerations include "[1] the relationship between the need for the use of force and the amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; and [6] whether the plaintiff was actively resisting." *Id*. These factors, too, are not "exclusive" but instead merely "illustrate the types of objective circumstances potentially relevant to a determination of excessive force." *Id.*

Consistent with our previous discussion of the stages of the criminal justice system and the corresponding constitutional rights that attach at each stage, the considerations identified in the Fourth Amendment and Fourteenth Amendment contexts, although similar, differ in important ways. Namely, they protect against different types of infringements upon constitutional rights. And although both are now evaluated under an objective standard, the Fourth Amendment inquiry is arguably more favorable to a plaintiff because it protects from unreasonable seizures of *free citizens*. *See Bell*, 441 U.S. at 546 ("A detainee simply does not possess the full range of freedoms of an unincarcerated individual."). On the other hand, the balance is recalibrated in the pre-trial detainee context in a manner arguably less

19

favorable to the plaintiff; there, the inquiry is whether the conduct was related to "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," so long as that conduct is not punitive in character. *Kingsley*, 576 U.S. at 397 (alteration in original) (quoting *Bell*, 441 U.S. at 540).

This distinction is made more apparent when comparing the factors themselves. Most notably, under the *Kingsley* test, courts are to consider "[1] the relationship between the need for the use of force and the amount of force used; [2] the extent of the plaintiff's injury; [and] [3] any effort made by the officer to temper or to limit the amount of force." *Id.* These additional factors supplement the *Graham* analysis with an additional deference "to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (alteration in original) (quoting *Bell*, 441 U.S. at 547). In sum, then, we and the Supreme Court have never suggested that precisely the same standard applies when assessing the objective reasonableness of the use of force under the Fourth and Fourteenth Amendments.

**2**

Mr. Geddes also argues that Defendants were "put on notice of" his constitutional claim—even if he styled it as a Fourteenth Amendment violation—because he clearly stated "that the individual jailers made use of force that was not objectively reasonable." Aplt.'s Opening Br. at 43; *see also id.* at 44 ("In fact, the Complaint alleges that . . . he was subjected to force that was objectively [un]reasonable under the circumstances. That is the standard applicable to an alleged

20

use of excessive force under both the Fourth and Fourteenth Amendments. Plainly,

the Complaint provided Defendants with sufficient notice that he was making just

such a claim." (citation omitted)). Again, we disagree. As an initial matter,

Mr. Geddes's argument ignores the fact that a § 1983 claim must "isolate the precise

constitutional violation" committed by a defendant.[6] *Baker*, 443 U.S. at 140.

---

[6] Mr. Geddes also appears to implicitly argue that he may bring his claim as an excessive-force claim under § 1983. *See* Aplt.'s Opening Br. at 2 (framing issue presented for review as "[w]hether Mr. Geddes'[s] claims under 42 U.S.C. § 1983 alleging use of excessive force by his jailers and ratification by Weber County present genuine issues of material fact that preclude summary judgment"). That is, Mr. Geddes seems to argue that his claim is cognizable under § 1983 even without reference to a specific amendment. *See* Aplt.'s Reply Br. at 11 ("The 'Issues Presented for Review' . . . ask whether Mr. Geddes has properly stated a claim for relief under Section 1983, without reference to the particular standard that applies to a proper resolution of that question. . . . Section 1983 provides for a private right of action for an alleged violation of a right secured by the Constitution."); *id.* at 12 ("Mr. Geddes'[s] Complaint properly sets out a cognizable claim under Section 1983 for use of excessive force that was objectively unreasonable. As we note there, to state a claim under Section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States. . . . Mr. Geddes'[s] Complaint does just that." (citation omitted)); *cf.* Aplt.'s Opening Br. at 34 ("[T]he cognizable legal theory underlying Mr. Geddes'[s] claims against the County and the individual jailers is that he was subjected to a use of force that was objectively unreasonable in the situation confronted by the individual jailers at the Jail. That is a valid claim."). But this argument is misguided. The Supreme Court has made clear "§ 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham*, 490 U.S. at 393–94 (quoting *Baker*, 443 U.S. at 144 n.3); *accord Crocker*, 995 F.3d at 1246 ("That's because § 1983 protects rights—it doesn't create them."). Mr. Geddes was obligated to define the legal framework under which he intended to proceed, and as a result of not doing so, he cannot fall back on some generic excessive-force allegation that is divorced from a constitutionally recognized excessive-force claim or untethered to a specific amendment. This is because the Supreme Court has made clear that "there is [not] a generic 'right' to be free from excessive force, grounded not in any particular constitutional provision but rather in 'basic principles of § 1983 jurisprudence.'" *Graham*, 490 U.S. at 393.

21

Therefore, even if Mr. Geddes had only vaguely alleged excessive force—and not explicitly tethered his claim to the Fourteenth Amendment alone—this still would not suffice.  Moreover, Mr. Geddes was obligated to provide "fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) ("[T]he burden rests on the plaintiff[] to provide fair notice of the grounds for the claims made against each of the defendants.").

Here, however, Mr. Geddes failed to provide fair notice to Defendants that his § 1983 claim is a Fourth Amendment excessive-force claim instead of a Fourteenth Amendment claim.[7]  The amended complaint repeatedly, unequivocally stated that

---

[7]     As noted at oral argument, *see* Oral Arg. 22:25–23:20, Mr. Geddes's summary judgment response brief does indeed acknowledge that "[e]xcessive force claims are governed by the Fourth Amendment's 'objective reasonableness' standard," Aplt.'s App. at 138 (quoting *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 664 (10th Cir. 2010)), and he identifies the three *Graham* factors used to determine objective unreasonableness, *id.* at 139–40.  But in a footnote immediately after his recitation of the Fourth Amendment standard, Mr. Geddes argues that it "is not quite as clear cut" "that the standard applicable under the Fourth Amendment to an arrestee applies here." *Id.* at 138 n.5.  Although Mr. Geddes acknowledges that this court has held "that the Fourth Amendment, not the Fourteenth, governs excessive force claims arising from an 'arrestee detained without a warrant and *prior* to a probable cause hearing,'" *id.* at 139 n.5 (quoting *Est. of Booker*, 745 F.3d at 419), he calls into question whether this should apply to his circumstances because "Mr. Geddes had already been seized" and the ultimate probable cause determination was "merely a judicial stamp of approval on the Trooper's finding of probable cause for the arrest and detention," *id.*  With this in mind, he notes that one could see this as a "continuing seizure and apply the Fourth Amendment" or "one could also argue that the *Fourteenth* Amendment should apply because Mr. Geddes had already been seized." *Id.* (emphasis added).  Mr. Geddes concludes that "there is no practical difference in the outcome in application of the two standards." *Id.*

the basis for the § 1983 claim was a violation of rights "secured by the Fourteenth Amendment." Aplt.'s App. at 43; *see also id.* at 44 (characterizing the excessive force as a "deprivation of Mr. Geddes's rights under the Fourteenth Amendment"). By doing this, Mr. Geddes's complaint only provided fair notice that the basis for his § 1983 action was a purported Fourteenth Amendment violation. The complaint nowhere indicated that the basis of his claim instead might be the Fourth Amendment. Yet, as we have now explained, different legal frameworks govern our analysis of Fourth Amendment and Fourteenth Amendment excessive-force claims. Pleading one type of excessive-force claim cannot put defendants on notice of the other type of claim. Instead, Mr. Geddes's imprecise complaint made it "impossible for any of [Defendants] to ascertain what particular unconstitutional acts they are alleged to have committed." *Robbins*, 519 F.3d at 1250.

**3**

Lastly, Mr. Geddes argues that "even if [his] citation to the Fourteenth Amendment in [his] Complaint was incorrect, the appropriate result would be to treat

Therefore, Mr. Geddes's invocation of the *Graham* standard in his summary judgment response brief was equivocal and hardly could be said to have put Defendants on clear notice that he indeed brought his claim *solely* under the Fourth Amendment. He did not disclaim his Fourteenth Amendment claim when Defendants brought to his attention the reality that his chosen amendment did not provide a basis for relief. And instead, when read in context of the entire summary judgment response brief and in light of his appellate briefing, it is just another example of Mr. Geddes obscuring the exact nature of his claims and failing to follow our repeated admonition that a plaintiff must identify the specific constitutional amendment under which he seeks relief.

the Complaint and his summary judgment briefing as asserting a claim for use of force that is objectively unreasonable under the Fourth Amendment." Aplt.'s Opening Br. at 47–48. He rightly notes that "[g]enerally, failure to set forth in the complaint a theory upon which the plaintiff could recover does not bar a plaintiff from pursuing a claim," especially in the absence of prejudice to a defendant. *Id.* at 45 (quoting *Elliott Indus. Ltd. v. BP Am. Prod. Co.*, 407 F.3d 1091, 1121 (10th Cir. 2005)). However, "[t]he liberalized pleading rules . . . do not permit plaintiffs to wait until the last minute to ascertain and refine the theories on which they intend to build their case." *Elliott Indus.*, 407 F.3d at 1121 (quoting *Green Country Food Mkt., Inc. v. Bottling Grp., LLC*, 371 F.3d 1275, 1279 (10th Cir. 2004)). We have explained that "[t]his practice, if tolerated, 'would waste the parties' resources, as well as judicial resources, on discovery aimed at ultimately unavailing legal theories and would unfairly surprise defendants, requiring the court to grant further time for discovery or continuances.'" *Green Country*, 371 F.3d at 1279 (quoting *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1091 (10th Cir. 1991)) (finding the district court properly precluded plaintiff from litigating a new legal theory raised for the first time in response to defendant's motion for summary judgment).

But Mr. Geddes's equivocal and waffling litigation posture throughout this case has engendered a similar conundrum. Mr. Geddes never asked the district court to construe his complaint as actually alleging solely a Fourth Amendment violation.[8]

---

[8] Perhaps the district court could have ordered—in its discretion—supplemental briefing on the Fourth Amendment issue or could have construed

In fact, prior to this appeal, Mr. Geddes adamantly refused to concede that the Fourth Amendment supplied the sole basis of his § 1983 action. Instead, he persistently maintained that his claim arose under the Fourteenth Amendment. His mistake is no mere accident. Even after Defendants pointed out the error, Mr. Geddes described Defendants' assertion that he could only pursue his claim under the Fourth Amendment as "border[ing] on the frivolous." Aplt.'s App. at 114 n.2; *see, e.g.*, *id.* at 139 n.5 (arguing that because "as a practical matter, Mr. Geddes had already been seized when he was standing alone, handcuffed in the jail cell," one could "argue that the Fourteenth Amendment should apply because Mr. Geddes had already been seized").

Mr. Geddes has continued to waffle on what is the exact constitutional basis for his claim and has refused to accept even on appeal the Fourth Amendment framework as the *sole* basis for his action. The closest Mr. Geddes has come to conceding his error in continually relying on the Fourteenth Amendment is to argue that the same standard applies under both amendments, and, therefore, it does not matter under which amendment Mr. Geddes has elected to bring his claim. But as mentioned above, not only have our precedents made clear that a litigant must choose a specific amendment under which to bring his claim, but we have also explained that

Mr. Geddes's complaint as asserting a Fourth Amendment claim—if he had agreed that he must prove his case under that Amendment, as the plaintiff did in *Olseth v. Larson*, No. 2:02-CV-1122, 2009 WL 44686, at *2–3 (D. Utah Jan. 5, 2009) (unpublished). But the district court was not asked to do so, did not do so, and was not obliged to do so *sua sponte*.

there are important distinctions between an excessive-force claim brought under the Fourth and Fourteenth Amendment.

Only now, for the first time, does Mr. Geddes somewhat acknowledge his error. But only somewhat: he still insists that the Fourteenth Amendment provides a valid basis for his claim, yet argues in the alternative that we could also construe his complaint as asserting a Fourth Amendment claim, if necessary. Thus, by no means could we say that Mr. Geddes has "fail[ed] to reference the correct constitutional amendment through mere inadvertence." *Doe v. Univ. of Denver*, 952 F.3d 1182, 1187 n.2 (10th Cir. 2020); *see id.* ("[W]e cannot construe Plaintiff's claim as if brought under the Fifth Amendment. Plaintiff is represented by capable attorneys, and his choice to eschew reliance on the Fifth Amendment cannot be chalked up to mere inadvertence.").

Instead, Mr. Geddes's actions have gone beyond "wait[ing] until the last minute" to acknowledge that the Fourth Amendment provides the *sole* basis under which he can recover; he only decided to raise the Fourth Amendment in the *alternative* after the district court informed him that he could not bring his claim pursuant to the Fourteenth Amendment. *Elliott Indus.*, 407 F.3d at 1121. That is, rather than engage exclusively with the Fourth Amendment framework on appeal— and thus unequivocally acknowledge expressly or through the content of his arguments that his continual reliance on the Fourteenth Amendment was erroneous— Mr. Geddes asks us to save him from any error he *may have* committed in arguing under the Fourteenth Amendment rubric—*if* we determine that this was error. *See*

26

Aplt.'s Opening Br. at 49; Aplt.'s Reply Br. at 16 (arguing we should excuse his

citation to the wrong amendment "assuming for the sake of argument that his citation

was incorrect").

Indeed, if anything, his arguments on appeal—which he reiterated at oral

argument—double down and make even clearer his refusal to concede his error or

engage exclusively with the Fourth Amendment framework.  He instead argues that

the choice of amendment does not matter, but if it does, his claims were still

appropriately brought under the Fourteenth Amendment.  *See* Aplt.'s Opening Br.

at 35 ("[C]ontrary to the district court's conclusion, Mr. Geddes has stated a

cognizable claim for relief—regardless of whether we cite to the Fourth or

Fourteenth Amendment."); *id.* at 40 ("[T]he factors set out by the Supreme Court in

*Kingsley* as applicable to a pretrial detainee under the Fourteenth Amendment are a

perfect fit to the situation presented here . . . ."); Aplt.'s Reply Br. at 13 (arguing

"that the circumstances presented here actually call for application of the factors set

out in *Kingsley*").

Therefore, Mr. Geddes's circumstance is a paradigmatic example of when it

would be *inappropriate* to allow a plaintiff to advance a new theory not pleaded in

his complaint.  Not only does Mr. Geddes urge us to allow a last minute "shift in the

thrust of the case" to bring his Fourth Amendment theory, but in doing so, he asks us

to allow him to essentially refine his theory in real time.  We will not tolerate this

sort of wait-and-see litigation because it would have the effect of wasting the

resources of the trial court and the court of appeals.  More specially, it would allow

Mr. Geddes here a do-over after he has been clearly told repeatedly—including by the judicial voices—that the theory of his case is wrong. *Cf. McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 999 (10th Cir. 2002) ("We have therefore repeatedly stated that a party may not lose in the district court on one theory of the case, and then prevail on appeal on a different theory." (quoting *Lyons v. Jefferson Bank & Tr.*, 994 F.2d 716, 721 (10th Cir. 1993)).

Mr. Geddes nonetheless points to two of our decisions for support. *See* Aplt.'s Opening Br. at 46–47 (citing *McBeth v. Himes*, 598 F.3d 708 (10th Cir. 2010) and *Est. of Lockett v. Fallin*, 841 F.3d 1098 (10th Cir. 2016)).[9] Yet these decisions offer him no aid. Instead, they only underscore why it would be inappropriate now to construe Mr. Geddes's action as asserting a Fourth Amendment violation.

In the first decision, *McBeth v. Himes*, we upheld the district court's decision to analyze a plaintiff's claim as a First Amendment claim, even though the plaintiff had alleged consistently in the litigation—up to and including her response to the defendant's motion for summary judgment—that the violation at issue involved a violation of the Sixth Amendment. *See* 598 F.3d at 716. Specifically, the district

---

[9]    Mr. Geddes also points to a district court opinion where the district court allowed an excessive-force claim that occurred while the plaintiff was in a police car to proceed as a Fourth Amendment claim, although pleaded as a Fourteenth Amendment claim, because there was no prejudice to the defendant. Aplt.'s Opening Br. at 47 (citing *Olseth*, 2009 WL 44686, at *1). Although we are of course not bound by this authority, it nevertheless does not help Mr. Geddes, because unlike Mr. Geddes, the plaintiff in *Olseth* unequivocally "agree[d] that she must prove her case under the Fourth Amendment" in her summary judgment response. *Id.* at *2.

court explained that "[w]hile McBeth articulates her claim in terms of the Sixth Amendment, it is clear from her argument and her invocation of *DeLoach* that her claim is actually founded on the First Amendment and its guarantees regarding freedom of association and speech." *McBeth v. Santi*, No. 02–cv–00851, 2007 WL 274743, at *4 (D. Colo. Jan. 29, 2007) (unpublished) (citing *DeLoach v. Bevers*, 922 F.2d 618, 620 (10th Cir. 1990) ("The right to retain and consult with an attorney, however, implicates not only the Sixth Amendment but also clearly established First Amendment rights of association and free speech.")), *reversed in part on other grounds by McBeth*, 598 F.3d at 726.  *McBeth* is distinguishable from this case because Mr. Geddes made it far from clear that he was actually bringing a Fourth Amendment claim in his summary judgment response, or for that matter, on appeal. As discussed here throughout, he has continually waffled on the exact constitutional basis for his claim and insisted that, when push comes to shove, his claim properly arises under the Fourteenth Amendment.

In the second decision, *Estate of Lockett v. Fallin*, we entertained a plaintiff's Eighth Amendment deliberate-indifference claim even though the complaint made only a single isolated reference to deliberate indifference included under a claim for relief labeled "Eighth Amendment violation—Torture."  841 F.3d at 1109.  We explained, "[a]lthough Lockett's Estate's first claim needs some stretching to raise a deliberate-indifference claim . . . we will do so." *Id.*  But unlike here, Mr. Lockett's Estate argued in its summary judgment response brief for the very interpretation adopted by this court.  Specifically, the Estate argued that "[r]egardless of the label

29

affixed to the Eighth Amendment inquiry, the facts alleged are sufficient to state a

claim for deliberate indifference." Pl.'s Resp. to Defs.' Mot. to Dismiss at 5 n.2, *Est.*

*of Lockett v. Fallin*, No. CIV-14-1119 (W.D. Okla. Apr. 6, 2015), ECF No. 47;

*cf. Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1288 (10th Cir. 2017) (reviewing the

briefing in a prior Tenth Circuit case to "confirm[] that the parties never challenged"

a particular issue).

Therefore, Mr. Geddes's circumstances are distinguishable from these two

cases, because Mr. Geddes has asked for his pleading error to be excused only while

his case has been pending on appeal—a treatment he did not ask for in the district

court.[10]

---

[10]     Defendants also argue that Mr. Geddes "did not preserve in the district court the legal and factual issues he now asserts on appeal." Aplees.' Resp. Br. at 23 (bold-face font omitted). Most relevant here, they explain that "[h]e cannot, for the first time on appeal, argue that the district court should just construe his Fourteenth Amendment claim as a Fourth Amendment claim. . . . Plaintiff failed to preserve these arguments in the lower court, and therefore they should be deemed waived." *Id.* at 25. In reply, Mr. Geddes argues that he indeed made this argument in the district court, and if he did not, he should have the benefit of our plain error review. Aplt.'s Reply Br. at 5, 8–9; *see id.* at 17 ("To be sure, Mr. Geddes did not ask for leave to amend. Rather, . . . he . . . pressed the district court to treat a claim under the Fourth Amendment as having been raised, if necessary, through his Complaint and summary judgment briefing . . . .").

It is true that Mr. Geddes did not preserve this issue for appeal—specifically, he forfeited it. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127–28 (10th Cir. 2011) ("If the theory was intentionally relinquished or abandoned in the district court, we usually deem it waived and refuse to consider it. By contrast, if the theory simply wasn't raised before the district court, we usually hold it forfeited." (citations omitted)). Although Mr. Geddes is correct that in his summary judgment response brief he did include the Fourth Amendment objective standard and the *Graham* factors, he nowhere argued that his claim should be construed *solely* as a Fourth Amendment claim, and he fails to point to any place where he "pressed the district

30

In sum, then, because Mr. Geddes persistently erred in pleading his claim and

he never conceded this error, because the time has passed for Mr. Geddes to ask for

his claim to now be construed as based on the Fourth Amendment, and because

---

court to treat a claim under the Fourth Amendment as having been raised." *See* Aplt.'s Reply Br. at 17. Instead, as discussed throughout, Mr. Geddes simply argued that his choice of Amendment did not matter. *See* Aplt.'s App. at 139 n.5 ("[O]ne could make an [argument] that there was [a] continuing seizure and apply the Fourth Amendment, as Defendants say we should do; or, alternatively, one could also argue that the Fourteenth Amendment should apply because Mr. Geddes had already been seized. . . . in light of the facts presented here, there is no practical difference in the outcome in application of the two standards.").

Here, for the first time, Mr. Geddes argues—only in the alternative—that if his claim postured under the Fourteenth Amendment fails, he should be able to proceed under a Fourth Amendment theory. Therefore, because this is the first time that he has requested this treatment, this theory is forfeited, and he therefore is only entitled to review under our rigorous plain error standard. *See, e.g.*, *SEC v. GenAudio, Inc.*, 32 F.4th 902, 948 (10th Cir. 2022); *cf. McDonald*, 287 F.3d at 999 ("It is clear in this circuit that absent extraordinary circumstances, we will not consider arguments raised for the first time on appeal. This is true whether an appellant is attempting to raise 'a bald-faced new issue' or 'a new theory on appeal that falls *under the same general category* as an argument presented at trial.'" (emphasis added) (citation omitted) (quoting *Lyons*, 994 F.2d at 722)). Further, our plain error review does not save him, because the district court did not commit plain error by not construing his Fourteenth Amendment pleadings as a Fourth Amendment claim *sua sponte*. *See United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (en banc) ("[A]n error is 'plain' if it is clear or obvious at the time of the appeal."); *see also United States v. Sineneng-Smith*, --- U.S. ----, 140 S. Ct. 1575, 1579 (2020) ("'[C]ourts are essentially passive instruments of government.' They 'do not, or should not, sally forth each day looking for wrongs to right. [They] wait for cases to come to [them], and when [cases arise, courts] normally decide only questions presented by the parties.'" (alterations in original) (quoting *United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir. 1987) (Arnold, J., concurring in denial of reh'g en banc)). However, at the end of the day, we need not concern ourselves with this preservation question. *See, e.g.*, *Abernathy v. Wandes*, 713 F.3d 538, 552 (10th Cir. 2013) ("[T]he decision regarding what issues are appropriate to entertain on appeal in instances of lack of preservation is discretionary."). Mr. Geddes's argument fails under any standard of review.

31

Mr. Geddes is ultimately "the master of his complaint," we will not now rescue it from his persistent error to plead a cognizable basis for his action. *Bledsoe v. Vanderbilt*, 934 F.3d 1112, 1119 (10th Cir. 2019) (quoting *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1220 (10th Cir. 2011)).

## III

For the foregoing reasons, we affirm the district court's grant of summary judgment for Defendants and its dismissal of Mr. Geddes's § 1983 action with prejudice.

Entered for the Court

Jerome A. Holmes
Circuit Judge

*Hyrum James Geddes v. Weber County et al.*, No. 20-4083,
**BACHARACH**, J., dissenting

In this appeal, the main issue is whether two jailers should obtain

summary judgment based on the plaintiff's omission of the applicable

constitutional amendment in his complaint. The majority answers *yes*, and I

would answer *no*. So I respectfully dissent as to the jailers' liability.

## 1.    Two jailers use force against Mr. Geddes.

Mr. Hyrum Geddes was arrested for speeding, driving under the

influence of alcohol, and carrying a dangerous weapon. After the arrest,

Mr. Geddes was taken to Weber County's jail, where he was handcuffed

and put in a holding cell. While he was there, a jailer told him to remove

his boots. Mr. Geddes didn't comply,[1] and two jailers pushed him to the

floor, causing him to hit his head on the concrete floor. Afterward,

Corporal Moss kept his knees on the back of Mr. Geddes's neck to keep

him pinned to the floor.

Mr. Geddes sued the two jailers (Corporal Moss and Deputy Shaner)

and Weber County under 42 U.S.C. § 1983, alleging unreasonable force in

violation of the Fourteenth Amendment. The jailers moved for summary

judgment, arguing that

---

[1]    The parties disagree on Mr. Geddes's reason for disobeying the
instructions: He says that he could not remove the boots because he was
handcuffed; the jailers say that Mr. Geddes chose to disobey the
instructions.

- Mr. Geddes had improperly invoked the Fourteenth Amendment rather than the Fourth Amendment and

- qualified immunity applied.

**2.    Mr. Geddes's omission of the Fourth Amendment in the complaint did not justify summary judgment.**

The district court correctly held that the Fourth Amendment provides the test for evaluating Mr. Geddes's claim. But the court erred by granting summary judgment to the jailers on the ground that Mr. Geddes had improperly invoked the Fourteenth Amendment. The district court should instead have evaluated the claim under the Fourth Amendment.

**A.    The Fourth Amendment, applied through the Fourteenth Amendment, provides the applicable test.**

The Fourth Amendment prohibits government agents from conducting unreasonable searches and seizures. U.S. Const. amend IV. This prohibition "applie[s] to the states through the Fourteenth Amendment's Due Process Clause." *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1240 (10th Cir. 2003) (en banc).

Given the applicability of the Fourth Amendment, it provides the constitutional test for excessiveness of force between the arrest and a finding of probable cause. *Estate of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014). After a finding of probable cause, the Fourteenth Amendment provides the constitutional test. *Id.*

2

The jailers used force before a finding of probable cause. So the Fourth Amendment (not the Fourteenth) provided the applicable test for Mr. Geddes's claim. *Id.* Though the applicable test came from the Fourth Amendment, the claim itself arose under the Fourteenth Amendment. "In a technical sense, a Fourth Amendment claim against [state] officers is also a Fourteenth Amendment claim, because that is the amendment that incorporates the Fourth Amendment's protections against the states." *Mondragón v. Thompson*, 519 F.3d 1078, 1082 n.3 (10th Cir. 2008). Though we commonly refer to claims against state officers as Fourth Amendment claims, these claims are "strictly speaking . . . claim[s] under the Fourteenth Amendment." *Colbruno v. Kessler*, 928 F.3d 1155, 1161 (10th Cir. 2019). So in the complaint, Mr. Geddes correctly invoked the Fourteenth Amendment as the constitutional source for his protection against excessive force.

The district court and the majority point out that the test for the claim comes from the Fourth Amendment. But "the Fourteenth Amendment standard is . . . almost identical to the Fourth Amendment standard." *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 195 n.6 (3d Cir. 2021). The standard under the Fourteenth Amendment is whether "the force purposely or knowingly used against [the claimant] was *objectively unreasonable . . .* from the perspective of a reasonable officer on the scene." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (emphasis added). The standard

3

under the Fourth Amendment is whether the force was *objectively unreasonable* "in light of the facts and circumstances confronting [the officers], without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). We've thus concluded that the "same objective standard . . . applies to excessive-force claims brought under either the Fourth or the Fourteenth Amendment." *McCowan v. Morales*, 945 F.3d 1276, 1283 n.6 (10th Cir. 2019).[2] Given the similarity between the tests under the Fourth and Fourteenth Amendments, the complaint supplied all of the notice that the jailers needed.

**B.     Mr. Geddes was not required to cite the Fourth Amendment in his complaint.**

In the complaint, Mr. Geddes alleged excessive force and described what had happened. [Appellant's Appx. vol. 1, at 31, 35–36.] The jailers point out that Mr. Geddes did not cite the Fourth Amendment. But he had no need to do so. *See McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010) ("Generally, failure to set forth in the complaint a theory upon which the plaintiff could recover does not bar a plaintiff from pursuing a claim." (quoting *Elliott Indus. Ltd. v. BP Am. Prod. Co.*, 407 F.3d 1091, 1121 (10th Cir. 2005))); *see also Johnson v. City of Shelby, Miss.*, 574 U.S. 10,

---

[2]     The jailers argue that Mr. Geddes did not present this theory in district court. They are mistaken. Mr. Geddes insisted in district court that the standards under the Fourth and Fourteenth Amendment bear "no practical difference." Appellant's App'x vol. 2, at 139 n.5, 143–44 n.6.

4

11 (2014) (per curiam) (stating that the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted"); 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1219 (4th ed. 2022) (stating that the federal rules make "it clear that it is unnecessary to set out a legal theory for the plaintiff's claim for relief"). Mr. Geddes needed only to plead factual allegations that would create a constitutional violation. *Johnson*, 574 U.S. at 12.

The jailers argue that Mr. Geddes did not plead facts that would state a Fourth Amendment claim because

- he had classified himself as a pretrial detainee and

- the Fourteenth Amendment, not the Fourth, provides the test for claims of excessive force against pretrial detainees.

But in the complaint itself, Mr. Geddes had no obligation to cite the pertinent amendment. *See* pp. 4–5, above. So the failure to cite the Fourth Amendment in the complaint wouldn't warrant dismissal.

After filing the complaint, Mr. Geddes clarified his theory. For example, when responding to the motion for summary judgment, Mr. Geddes argued that the applicable test came from the Fourth Amendment: "Excessive force claims are governed by the Fourth Amendment's 'objective reasonableness standard.'" Appellant's App'x vol. 2, at 138

(citation omitted). He then identified the three factors applicable for Fourth Amendment claims:

> In determining whether the use of force is unreasonable in a particular situation, this Court is called upon to consider the three non-exclusive factors enunciated by the Supreme Court in *Graham v. Connor*, 490 U.S. 386 (1989): (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to flee.

*Id.* at 139–40. Having identified these factors, Mr. Geddes applied them, arguing extensively that a triable fact-issue existed under the Fourth Amendment because the jailers had used force after pinning Mr. Geddes to the ground and averting any possible threat. *Id.* at 140–49.

The majority concedes that when Mr. Geddes opposed summary judgment, he

- "acknowledge[d] that [e]xcessive force claims are governed by the Fourth Amendment's 'objective reasonableness standard'" and

- "identifie[d] the three *Graham* factors used to determine objective unreasonableness" under the Fourth Amendment.

Maj. Order & Judgment at 22 n.7. Though the majority concedes that Mr. Geddes relied on the right constitutional amendment, the majority faults him for relying also on the wrong amendment. But when the plaintiff unequivocally relies solely on the wrong constitutional amendment, we said in *McBeth v. Himes*, 598 F.3d 708 (10th Cir. 2008), that we must assess the evidence under the right constitutional amendment. *Id.* at 716.

6

There the plaintiff sued employees of the state's department of human services, invoking the Sixth Amendment. *See id.* But the applicable amendment actually came from the First Amendment, not the Sixth Amendment; and the complaint contained no mention of the First Amendment. *See id.* (stating that the complaint does not "so much as mention the First Amendment").

Despite the plaintiff's unequivocal reliance on the Sixth Amendment, rather than the First, the district court

- concluded that the plaintiff had invoked the wrong constitutional amendment and

- recharacterized the claim as one under the First Amendment.

*Id.* After recharacterizing the claim, the district court concluded that the newly recognized claim under the First Amendment would withstand summary judgment even though any claim under the Sixth Amendment (the amendment that the plaintiff had actually invoked) would have failed. *Id.* at 716–17.

On appeal, the defendant challenged this ruling on the ground that the plaintiff had never alleged a violation of the First Amendment.[3] We

---

[3]    In the opinion, we said:

[The defendant] initially argues that [the plaintiff] never even brought [a First Amendment retaliation] claim against him. Although the Complaint does refer to "Plaintiff's Sixth Amendment Right to Counsel," it neither states which Defendants allegedly violated that right, nor does it so much as

7

rejected this challenge even though the plaintiff had *never* characterized her claim in district court as one under the First Amendment. Why? Because there was no prejudice to the defendant: He knew from the complaint and the briefs what the factual allegations were, and the plaintiff's reliance on the wrong constitutional amendment didn't affect the substance of those allegations. *Id.* at 716; *see also Ward v. Anderson*, 494 F.3d 929, 932 n.3 (10th Cir. 2007) (applying the Fourteenth Amendment to the claim even though both parties had mistakenly identified the Fifth Amendment as the source of the underlying right).

As in *McBeth*, the complaint supplied notice to the jailers of what they had allegedly done to violate the Constitution. And unlike the plaintiff in *McBeth*, Mr. Geddes identified the correct constitutional test in responding to the summary-judgment motion, making the legal basis of his claim clearer than it had been in *McBeth*.

In *McBeth*, we focused on the lack of prejudice to the defendant from reliance on the wrong constitutional amendment. *McBeth*, 598 F.3d at 716. Here too, the jailers suffered no prejudice from Mr. Geddes's reliance on the wrong amendment. From the complaint, the jailers knew that the

---

mention the First Amendment. Not until [the plaintiff's] response to [the defendant's] motion for summary judgment did she clearly allege a retaliation claim against [the defendant], and that claim was based on the Sixth Amendment.

598 F.3d at 716 (citations omitted).

8

allegations had triggered the Fourth Amendment. Indeed, the jailers have argued all along that the claim implicated the Fourth Amendment rather than the Fourteenth.

The majority downplays the impact of *McBeth*, stating that it "is distinguishable from this case because Mr. Geddes made it far from clear that he was actually bringing a Fourth Amendment claim." Maj. Order & Judgment at 29. But the majority elsewhere concedes that Mr. Geddes relied on the Fourth Amendment in his summary-judgment brief. *See* p. 6, above.

His fault, according to the majority, is his refusal to disclaim an *additional* theory involving the Fourteenth Amendment. Why would Mr. Geddes's refusal to disclaim an invalid theory trigger summary judgment even on his *valid* theory involving the Fourth Amendment? After all, the *McBeth* plaintiff also insisted on applying the wrong constitutional amendment. Maj. Order & Judgment at 28. How can we justify an award of summary judgment to the jailers based on Mr. Geddes's dual reliance on the right and wrong constitutional amendments when the *McBeth* plaintiff had relied *solely* on the *wrong* constitutional amendment?

* * *

Under *McBeth*, the district court should have addressed the merits of the claim. The complaint had put the jailers on notice of the nature of the claim; nothing more was necessary. We should thus do what we did in

9

*McBeth*: evaluate the claim under the right constitutional amendment and disregard reliance in the complaint on the wrong constitutional amendment.

### C.    The jailers' reliance on *Albright v. Oliver* is misguided.

The jailers rely on *Albright v. Oliver*, 510 U.S. 266 (1994). There the Supreme Court found that the plaintiff had incorrectly pleaded a Fourteenth Amendment claim because the Fourth Amendment had "'provide[d] an explicit textual source of constitutional protection' against [the] particular sort of government behavior" that the plaintiff had alleged. *Id.* at 273 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). The Court suggested that the Fourth Amendment might apply, but declined to consider this amendment because the plaintiff had not addressed it in his petition for certiorari. *Id.* at 274–75.

The jailers argue that we should also decline to consider Mr. Geddes's claim under the Fourth Amendment. He responds that his invocation of the Fourteenth Amendment should not prevent consideration of his claim under the Fourth Amendment. [Appellant's Opening Br. at 45–49.] I agree with Mr. Geddes.

The jailers argue that Mr. Geddes did not preserve this argument. I disagree because Mr. Geddes

- argued in district court that the force was objectively unreasonable, which was the standard under the Fourth Amendment, and

10

- applied the Fourth Amendment test in responding to the summary-judgment motion.

Appellant's App'x vol. 2, at 114 n.2, 138.

On the merits, *Albright* doesn't apply because Mr. Geddes filled the factual gap that had existed there. The *Albright* plaintiff had attributed his injuries to the initiation of a baseless prosecution; but all of his alleged injuries had resulted from the police's assumption of custody, which would potentially implicate the Fourth Amendment. *Albright*, 510 U.S. at 289 (Souter, J., concurring). So a gap existed between plaintiff's claim and the cause of his injuries. No such gap exists here, for Mr. Geddes

- attributed his injuries to the jailers' use of force while he was in custody and

- invoked the Fourth Amendment's protection against excessive force.

He thus filled the factual gap that had existed in *Albright*.

**3.     The jailers are not entitled to qualified immunity.**

The jailers alternatively urge us to affirm based on qualified immunity. To overcome qualified immunity, Mr. Geddes must show that

- Corporal Moss and Deputy Shaner violated a constitutional or statutory right and

- this right had been clearly established at the time of the violation.

11

*Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). Mr. Geddes made this showing by pointing to our precedent that had prohibited officers from

- using force against an arrestee who'd already been subdued or

- continuing to apply pressure to a suspect's back after he'd already been restrained.

So Mr. Geddes has met his burden to overcome summary judgment based on qualified immunity.

A.    **We assess qualified immunity under the standard for summary judgment.**

Because Mr. Geddes appeals a ruling on summary judgment, we conduct de novo review. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). In conducting de novo review, we view the evidence and reasonable inferences in the light most favorable to the nonmovant (Mr. Geddes). *Scott v. Harris*, 550 U.S. 372, 378 (2007). We then consider whether this view of the evidence and reasonable inferences could show the violation of a clearly established constitutional right. *Gutierrez v. Cobos*, 841 F.3d 895, 900–01 (10th Cir. 2016).

B.    **The factfinder could reasonably find a constitutional violation from the jailers' use of force.**

In my view, the evidence could reasonably show the violation of a clearly established right under the Fourth Amendment.

12

Under this amendment, force is excessive if it is objectively unreasonable. *Graham v. Connor*, 490 U.S. 386, 397 (1989). We evaluate objective reasonableness in light of the totality of the circumstances presented to the jailers, considering (1) the severity of the crime, (2) the presence of an immediate threat to the safety of jailers or others, and (3) the suspect's active resistance. *Weigel v. Broad*, 544 F.3d 1143, 1151–52 (10th Cir. 2008). These factors would render the jailers' force excessive if we were to properly view the evidence favorably to Mr. Geddes. *See* Part 3(A), above.

First, he was arrested on charges involving three misdemeanors: speeding, impaired driving, and carrying a dangerous weapon in the back of his truck while under the influence. Little force is appropriate when jailers are confronted by someone suspected of nonviolent misdemeanors. *See McWilliams v. DiNapoli*, No. 21-7045, 2022 WL 2812717, at *4 (10th Cir. July 19, 2022) (to be published) (concluding that only minimal force could be used when the suspected offense was minor). So the first factor suggests that only minimal force was needed.

Second, Mr. Geddes did not pose an immediate threat to anyone's safety. Mr. Geddes was handcuffed, and he faced his cell wall with his hands behind his back while surrounded by four jailers. It is difficult to imagine that he could have harmed the jailers or anyone else from this position.

13

The jailers argue that they needed to take off Mr. Geddes's boots because he could have hidden weapons or drugs in his boots. But Mr. Geddes was handcuffed and surrounded by four jailers. A factfinder could reasonably find that Mr. Geddes couldn't search inside his boots while he was handcuffed and surrounded by jailers. So the second factor suggests that the jailers had little need to use force.

Third, a fact question exists on whether Mr. Geddes was resisting the removal of his boots. The jailers assert that Mr. Geddes refused to remove his boots, resisted movement to his knees, and scuffled when jailers tried to bring him to the floor. But Mr. Geddes testified that

- he was unable to remove his boots because he was handcuffed and

- the jailers had threatened and attacked him.

A video exists, but it lacks sound and the jailers block most of Mr. Geddes's body from view. So we can't tell from the video what was said or whether Mr. Geddes resisted. *See McWilliams v. DiNapoli*, No. 21-7045, 2022 WL 2812717, at *3 (10th Cir. July 19, 2022) (to be published) (stating that a video recording did not blatantly contradict the plaintiff's sworn account because the court could not see some of the actions at issue); *Finch v. Rapp*, 38 F.4th 1234, 1241–42 (10th Cir. 2022) ("In the video, we see [the suspect] raise his hands—but there is nothing that could 'blatantly contradict' the conclusion his actions were nonthreatening."

14

(quoting *Estate of Valverde v. Dodge*, 967 F.3d 1049, 1062 (10th Cir. 2020))). Because the video is inconclusive, a factfinder could reasonably credit Mr. Geddes's version of events. *See Estate of Booker v. Gomez*, 745 F.3d 405, 414 n.12 (10th Cir. 2014) ("Because the video does not clearly controvert this disputed fact, we must resolve it in the Plaintiff's favor."). In Mr. Geddes's version, he was not resisting; so the third factor suggests that the jailers used greater force than needed.

The jailers argue that the evidence proves the lack of any serious injury from the jailers' use of force. This argument entails a factual dispute. Mr. Geddes testified that he had suffered a head injury and continued to feel the effects of the injury. From this testimony, a factfinder could reasonably regard the head injury as serious.[4]

All of the pertinent factors suggest that the force was excessive. So Mr. Geddes presented a genuine dispute of material fact on a violation of the Fourth Amendment.

C.    **The right was clearly established.**

That violation involved a clearly established constitutional right under two lines of precedent: (1) prohibiting the use of force against a

---

[4]    The force may have been excessive even without a physical injury. *See Fisher v. City of Las Cruces*, 584 F.3d 888, 897 (10th Cir. 2009) (noting that our precedents have held "that in excessive force cases 'proof of *physical* injury manifested by visible cuts, bruises, abrasions, or scars, is not an essential element'" (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1129 n.24 (10th Cir. 2007) (en banc))).

15

suspect already subdued and (2) disallowing sustained pressure to a suspect's back after he'd been subdued.

First, we held in *McCoy v. Meyers* and *Perea v. Baca* that force was excessive because the suspect had already been subdued. *McCoy v. Meyers*, 887 F.3d 1034, 1052 (10th Cir. 2018);[5] *Perea v. Baca*, 817 F.3d 1198, 1204 (10th Cir. 2016). Like the plaintiffs in *McCoy* and *Perea*, Mr. Geddes had been effectively subdued. He was handcuffed in a jail cell, surrounded by four jailers. So the jailers should have known from *McCoy* and *Perea* that the force was excessive.

Second, the jailers had the benefit of precedent prohibiting officers from putting sustained pressure on a suspect's back after restraining his hands and legs. For example, prior to the incident with Mr. Geddes, we had held that it was "clearly established that putting substantial or significant pressure on a suspect's back while that suspect is in a face-down prone position after being subdued and/or incapacitated constitutes excessive force." *Estate of Booker v. Gomez*, 745 F.3d 405, 424 (10th Cir. 2014) (quoting *Weigel v. Broad*, 544 F.3d 1143, 1155 (10th Cir. 2008)). Despite

---

[5]    We decided *McCoy* after the jailers had used force against Mr. McCoy (July 2017). But *McCoy* held that the law had been clearly established by three prior opinions decided between 1991 and 2008: *Dixon v. Richer*, 922 F.2d 1456 (10th Cir. 1991), *Casey v. City of Federal Heights*, 509 F.3d 1278 (10th Cir. 2007), and *Weigel v. Broad*, 544 F.3d 1143 (10th Cir. 2008). *See McCoy*, 887 F.3d at 1252 (discussing these cases). All of these opinions had preceded the use of force against Mr. Geddes.

16

that holding, Corporal Moss kept his knee on the back of Mr. Geddes's neck even after the removal of his boots.

The jailers argue that Mr. Geddes's resistance created room for disagreement in the heat of the moment. But a fact-issue exits on whether Mr. Geddes was resisting. *See* Part 3(A), above. And even if Mr. Geddes had initially resisted, continued force may have been excessive once the jailers had him handcuffed and planted face-down on the ground. *McCoy*, 887 F.3d at 1051–52.

The jailers also deny the existence of precedents applying the Fourth Amendment to incidents inside a jail. But the jailers don't explain how *McCoy* and *Perea* could forbid the use of force against a subdued arrestee outside of a jail but not inside one. If anything, Mr. Geddes's incarceration diminished the possibility of a threat or an escape. After all, the entire incident took place in a jail cell while Mr. Geddes was handcuffed and monitored by other jailers.

* * *

It is clearly established that the use of force would have been excessive based on precedents disallowing the use of force or sustained application of pressure to the back after subduing a suspect. So Corporal Moss and Deputy Shaner are not entitled to qualified immunity.[6]

---

[6]    The parties also present arguments on Deputy Shaner's duty to intervene to prevent Corporal Moss's use of force. But we need not address

17

**4.     I would remand for reconsideration of Weber County's motion for summary judgment.**

Mr. Geddes sued not only the jailers but also Weber County. The county urged summary judgment based on

- Mr. Geddes' reliance on the Fourteenth Amendment and

- lack of an unconstitutional policy or custom.

As discussed earlier, I'd reject the county's first argument. *See* Part 2, above. But I'd remand for the district court to consider the county's denial of an unconstitutional policy or custom.

\* \* \*

I would reverse the award of summary judgment to the jailers because

- Mr. Geddes properly presented a claim under the Fourth and Fourteenth Amendments and

- the jailers are not entitled to qualified immunity.

And given the fact issue on a constitutional violation, I would remand for the district court to reassess the county's motion for summary judgment.

---

these arguments because the video shows both jailers' active participation in the use of force.

18